**In re Raymond Everett BRAUDIS, Debtor.**

**Roger HUHMAN & Mark Stevenson, Plaintiffs,**

**v.**

**Raymond Everett BRAUDIS, Defendant.**

**Bankruptcy No. 87–02889–C–11.**
**Adv. No. 87–0467–C–11.**

United States Bankruptcy Court, W.D. Missouri, C.D.

May 31, 1988.

Carrie Francke, Columbia, Mo., for plaintiffs.

Jerry W. Venters, Jefferson City, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

FRANK W. KOGER, Bankruptcy Judge.

At issue before this Court is whether an indebtedness is owed by defendant to plaintiffs and whether or not, if owed, such indebtedness is nondischargeable.

### FACTS

Tiger Investments ("Tiger"), a limited partnership, was formed to facilitate investment in and renovation of a hotel in downtown Columbia, Missouri. In April of 1983, Mark Stevenson, plaintiff, paid $32,-000.00 to become a limited partner in Tiger Investments. He purchased 2 shares, or a 4% interest, in the partnership. This was financed by a $10,000.00 loan from Centerre Bank and a promissory note to Tiger for $22,000.00. At approximately the same time period, Roger Huhman, plaintiff, also acquired 2 shares, or a 4% interest in Tiger for $11,800.00. Representations were made about the prospects of the investment by Ray Braudis, a general partner and the managing partner of Tiger. He told plaintiffs about $400,000.00 needed to be raised for renovation and that when complete the hotel would be worth $2.4 million. An appraisal, dated March 1, 1983, is part of the record, appraising the hotel complex at a value of $2.4 million.

In May of 1983 Stevenson bought 3½ shares, or an 11% additional interest in Tiger. For this he paid $56,000.00 above his original investment.

A mortgage on the hotel was held by Louis Shelburne in the amount of $500,-000.00. It was junior only to a $300,000.00 deed of trust held by Centerre Bank. In January of 1984 defendant Braudis and Southmont Development (another partnership with Braudis as general partner) loaned Tiger an additional $302,000.00 and took mortgages junior to the two original mortgages. In March of 1984 Shelburne made an agreement with defendant Braudis to subordinate his mortgage to these new mortgages, and that matter has already been the subject of litigation in this Court.

In October of 1984, De Wayne Flint, plaintiff Stevenson, and defendant Braudis agreed to buy out Shelburne. Flint and Braudis each paid $6,000.00 toward the buy out and Stevenson paid $7,000.00 toward the buy out. As part of the agreement to buy out Shelburne, plaintiff Stevenson became a mortgage holder in addition to being a limited partner of Tiger. When the "garage" and land adjacent to the hotel were sold in June of 1985, plaintiff Stevenson's consent was obtained because he had to release his mortgage interest before the property could be sold. To obtain Stevenson's release, Tiger agreed to forgive the

$18,000.00 of the original $22,000.00 which Stevenson still owed Tiger. The proceeds from the sale of the garage were used to pay taxes, utilities and repairs. In addition, $9,000.00 went toward retiring the Shelburne mortgage. There is no evidence that any of the proceeds went personally to defendant Braudis.

In January of 1985, plaintiff Stevenson purchased bar room furniture from the partnership for $8,000.00. It originally was valued at $27,000.00, although there is some dispute as to its actual value. He leased the furniture to Tiger on March 18, 1985, plaintiff Stevenson loaned the partnership $1,000.00 for the purpose of paying utility bills for the hotel.

## ALLEGATIONS OF THE PLAINTIFFS

The plaintiffs allege that defendant Braudis, as general partner of Tiger, violated a fiduciary duty to them as limited partners of Tiger. They seek to have their claim found nondischargeable under 11 U.S.C. § 523(c) because the defendant committed fraud or defalcation while acting in a fiduciary capacity [§ 523(a)(4)]. 11 U.S.C. § 523(a)(4) reads:

> "(a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> .    .    .    .    .
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny; ..."

There are two separate claims to be analyzed—the claims as limited partners of Tiger Investments and the claims of plaintiff Stevenson personally. There will be discussed separately. In regard to the Tiger Investment claims, the questions for the Court to resolve are:

1. Is there a debt owed to the plaintiffs?

2. Is there a fiduciary duty owed to plaintiffs?

3. Was fraud or defalcation committed by defendant while under a fiduciary duty to plaintiffs?

4. Was there embezzlement or larceny by defendant?

## TIGER INVESTMENTS

### 1. IS A DEBT OWED TO PLAINTIFFS AS INVESTORS OF TIGER?

The facts show an investment by plaintiff Huhman of $11,800.00. Plaintiff Stevenson invested as follows:

| | | |
|---|---|---|
| $32,000.00 | ($10,000.00 | note from bank |
| | *$22,000.00 | promissory note to Tiger) |
| | | |
| $56,000.00 | ($40,000.00 | note from bank |
| | $ 6,000.00 | labor |
| | $10,000.00 | discount for buying ____ |
| | | additional shares) |
| | | |
| $88,000.00 | | |

* $18,000.00 was later forgiven to obtain his release of mortgage so Tiger could sell the garage of the hotel.

These amounts were invested in Tiger so that plaintiffs could become limited partners in the venture. A limited partnership always has risks associated with it and is not on the same ground as a debt or loan.

### 2. IS THERE A FIDUCIARY DUTY OWED TO PLAINTIFFS AS LIMITED PARTNERS?

■ Two cases were relied upon by plaintiffs to show a fiduciary duty: *In re Harris,* 458 F.Supp. 238 (D.Or.1976) and *In re Owens,* 54 B.R. 162 (Bkrtcy.D.S.C.1984). These cases are discussed below:

*In re Harris, supra,* states that the party seeking nondischargeability has the burden of proof. This view was affirmed in the Western District of Missouri in *In re Hickman,* 410 F.Supp. 528, 532 (W.D.Mo. 1976). Although many courts state that the standard is one of clear and convincing evidence, *In the Matter of Bogstad,* 779 F.2d 370, 372 (7th Cir.1985), *In re Bonefas,* 41 B.R. 74, 78 (Bkrptcy.E.D.Pa.1984), this Court has previously held that the usual standard of evidence in civil cases is sufficient. *In re Garner,* 73 B.R. 26 (Bkrtcy.W. D.Mo.1987). Although the court in *Harris* allowed nondischargeability of the debt, the court cautioned against 17(a)(4) [forerunner of § 523(a)(4)] being interpreted broadly. If all partnership or contract relationships were found to have created a fiduciary duty the exceptions could leave almost no

debts to be discharged. The standard enunciated, to impose fiduciary duty, is a finding of positive fraud involving moral turpitude proved by sufficient evidence to overcome the general rule of § 523(a)(4) only imposing fiduciary duty on technical or express trusts.

. *In re Owens, supra,* relied on *In re Kraus,* 37 B.R. 126 (Bkrptcy.E.D.Mich. 1984) for the position that a partnership creates a fiduciary relationship for purposes of 11 U.S.C. § 523(a)(4) *Kraus* has been rejected by the Eastern District of Missouri in *In re Holman,* 42 B.R. 848 (Bkrptcy.E.D.Mo.1984) and the Court chooses to follow the lead of our sister court. The facts were quite similar in *Holman* to what is here, and the court ruled that the disgruntled partner could not prevail on the "defalcation" and "fiduciary capacity" argument. The *Holman* court, *inter alia,* observed:

> "However, while under partnership law, the relationship between partners is a fiduciary relationship (citation omitted), courts interpreting the predecessor statutes to the present section 523(a)(4) did not give the term 'fiduciary capacity' the same broad meaning. Instead, they held that partners were not 'fiduciaries' within the meaning of these statutes, 2 *Collier on Bankruptcy,* section 523.14 ... The reason why courts construed the term 'fiduciary' so narrowly was because the term 'defalcation', unlike fraud, was construed to include not only conduct involving bad faith or intentional wrongdoing but also the mere failure to account for funds entrusted to the fiduciary (citations omitted) ... [T]he Court concludes that Congress did not intend when it enacted the present Bankruptcy Code to expand the meaning of this term to include ordinary agency relationships".
>
> "This interpretation was later approved by the Supreme Court in *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). Clearly then, the term 'fiduciary' as used in 11 U.S.C. § 523(a)(4) is limited to the class of fiduciaries including trustees of specific written declarations of trust, guardians, ad-

ministrators, executors, or public officers and, absent special considerations, does not extend to the more general class of fiduciaries such as agents, bailees, brokers, factors, and partners. Thus, the alleged indebtedness at issue in this case is not a debt for fraud or defalcation while acting in a fiduciary capacity".

*Holman, supra,* at pp. 850–51.

The Court, therefore, finds there was no fiduciary duty for purposes of § 523(a)(4) to plaintiffs by defendant in this action.

3. **WAS FRAUD OR DEFALCATION COMMITTED BY DEFENDANT WHILE UNDER A FIDUCIARY DUTY TO PLAINTIFFS?**

■ Having found defendant to have no fiduciary duty to plaintiffs the answer is clearly, no. It is possible that there was fraud involved in the sale of the limited partnerships to the plaintiffs, but if there was, their case has not been proven. No evidence was received other than the testimony of plaintiff Stevenson that defendant Braudis engaged in "puffing" when presenting the investment to plaintiffs.

It is inappropriate to allow every investor who is ultimately shown to have made a poor investment to recover the risk under the rubric of fraud. Every creditor in bankruptcy feels to some extent they have been cheated when they are not repaid fully on their claim. In the case at bar the claim must fail because the general partner is not liable to the limited partners just because the venture fails. Fiduciary capacity never arises based upon "the very act of wrongdoing out of which the contested debt arose". 3 *Collier on Bankruptcy,* ¶ 523.14, page 93.

The plaintiffs allege that they should have been informed as limited partners when the defendant and his other partnership loaned money to Tiger and took mortgage interests in the property. Although it is possible that self dealing was involved, it was not proven and defendant was acting within his rights as general partner for Tiger. Defendant Braudis was within his rights as general partner when he leased

the bar to himself and when he rented to members of his family.

The Limited Partnership Agreement states:

"11. *MANAGEMENT*: RAYMOND E. BRAUDIS shall be the managing partner of the partnership.

(a) *Powers of managing partner*: The managing partner shall have the power and authority on behalf of the partnership to manage, conduct, supervise and control the partnership business of acquiring, owning, financing, developing, improving, *leasing*, operating, managing and otherwise dealing with the real and personal property of the partnership ... By way of illustration ... to borrow money and incur other obligations; to draw, make, accept, endorse, sign and develop any note, drafts or other negotiable instruments or commercial papers; to deed, *mortgage*, pledge, grant security interests and/or otherwise encumber all or any part of any real or personal property ...

The fact that any partner, including the *managing partner*, or a member of any such person's family, *is directly* or indirectly *interested* in or connected with any person or organization employed by the partnership to perform a service or from *or to whom* or which *the partnership may buy or sell the property, shall not prohibit* the managing partner on behalf of the partnership from employing such person or organization or from otherwise dealing with him or it on any reasonable basis". (Emphasis added).

Another allegation of wrongdoing was the fact that a deal was made to subrogate Shelburne's mortgage to these new mortgages. There was never evidence presented to show improper financial dealing in regard to the transaction. In the record the exact facts regarding the transaction were never presented to the Court. After suggesting that defendant Braudis negotiated something improper, on p. 12 of plaintiffs' Post Hearing Brief is a suggestion that plaintiffs were left out and "might have been interested" if given the opportunity. This seems more the cry of a financial loser than one who has been truly defrauded.

Taken as a whole, the evidence puts defendant Braudis in an unfavorable light, but nevertheless falls far short of proving fraud or defalcation in a fiduciary capacity.

**4. WAS EMBEZZLEMENT OR LARCENY COMMITTED BY THE DEFENDANT?**

■ *In re Taylor*, 58 B.R. 849 (Bkrtcy.E. D.Va.1986) discusses the definition and elements of a cause of action for embezzlement or larceny. Embezzlement is the "misappropriation of property by a person who comes into possession of the property lawfully or with the consent of the true owner". *Taylor* at 854. While larceny is the "unlawful taking without the owners consent". *Taylor* at 854. The standard of proof is by clear and convincing evidence and the court in *Taylor* looked for an intent to convert, rather than an intent to harm.

The most clear allegation by plaintiffs in the instant case that relates to embezzlement is the allegation that defendant may have paid his own employee from the partnership funds. There was no clear and convincing proof of the allegation.

Plaintiffs did not address embezzlement or larceny in their petition or proof, relying instead on the fiduciary duty argument. The Court declines to look further than plaintiffs did in bringing the action.

**STEVENSON'S PERSONAL CLAIMS**

■ Proof was shown of a $1,000.00 advance by Stevenson to Tiger Hotel on March 18, 1985. Plaintiff Stevenson testified this was to be a three day loan to prevent the utilities for the hotel from being disconnected. To date, such a $1,000.00 claim has not been listed on any of the schedules of debtor and plaintiff Stevenson has filed no claim with the Court. To the Court this $1,000.00 debt looks no different from any other debt which a bankrupt is unable to pay. It, therefore, will be treated similarly to other unsecured debts in the bankruptcy if plaintiff Stevenson submitted a claim in the

Tiger Investments file before the time for filing claims had expired.

The final claim by the plaintiffs was in regard to the lease of bar room furniture by plaintiff Stevenson to defendant. A proof of claim regarding this debt has already been filed in the Tiger Investments case and may or may not pass the cold eyed scrutiny of the Trustee as a claim for administrative expense. However, that is a story for another day and the Court will not prejudge a matter not properly before it.

Based on the foregoing discussion, the Court DENIES plaintiffs' request for non-dischargeability of claims under 11 U.S.C. § 523(c) and their petition is DISMISSED.

This Opinion constitutes Findings of Fact and Conclusions of Law as required by Rule 7052, Rules of Bankruptcy.