In re Jeffrey Michael WEINER, Debtor.

Paul R. ARNETT, et al., Plaintiffs,

v.

Jeffrey Michael WEINER, Defendant.

Bankruptcy No. 87–21388–7.

Adv. No. 88–0001.

United States Bankruptcy Court,
D. Kansas.

Jan. 18, 1989.

Alan L. Markowitz, Kansas City, Mo., James S. Willis, Kansas City, Kan., Richard Ganulin, Overland Park, Kan., for debtor.

Timothy J. Sear, Kansas City, Mo., Dale E. Bennett, Overland Park, Kan., for plaintiffs.

Henry W. Green, Leavenworth, Kan.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter came for trial on September 27, 1988, upon the complaint of Paul R. Arnett, et al. to determine the dischargeability of debt of Jeffrey Michael Weiner pursuant to section 523(a)(2)(A), section 523(a)(4), and section 523(a)(6). The plaintiffs appeared by and through counsel, Timothy J. Sear. The debtor/defendant appeared by and through counsel, Alan L. Markowitz.

## FINDINGS OF FACT

Based on the exhibits, the testimony, the pleadings, and the record, this Court finds as follows:

1. On September 28, 1987, the debtor/defendant, Jeffrey Michael Weiner, filed a voluntary petition for relief under chapter 7 of title 11, United States Code.

2. Weiner is a certified public accountant and a lawyer. He received both degrees from Northwestern University in Evanston, Illinois.

3. The plaintiffs are all partners of Pro–Tax Investors (hereinafter "Pro–Tax"), a Kansas general partnership. Pro-tax was created as a vehicle for tax-sheltered investments by Weiner's clients. The purpose of the partnership was to provide partners with a means to invest in real estate ventures and tax incentive investments through a pooling of resources.

4. Pursuant to the partnership agreement, Weiner was to administer and to

manage the partnership on behalf of all the other partners. Weiner's title was "Administrative Partner" and "Tax Matters Partner." Weiner held the only management position with the partnership.

5. Any partner could recommend investments to the partnership. However, a majority vote of the partners was required to add a proposal to the list of approved investments. Upon selection of investments, the partnership assessed individual partners for their respective share of the investment obligations. The partnership also assessed individual partners for administrative costs.

6. Weiner, as administrative partner, assessed and collected the funds for both the capital investments and the administrative expenses. In addition, being a partner, Weiner was also required to pay and collect his own pro-rata capital investments and administrative expenses.

7. Weiner opened a bank account in the name of the partnership for the purpose of depositing the assessments and withdrawing the necessary funds for investments. Weiner was the sole signatory for the account.

8. Beginning in the summer of 1984, Weiner became unable to make payments as scheduled on his own scheduled investment commitments as a partner in Pro-Tax. By March 1, 1985, the arrearage in his assessment account totaled $39,640.55.

9. By June of 1985, Weiner found himself not only unable to pay his partnership assessments, but also suffering an acute cash shortage. At this point, Weiner began to "borrow" funds to pay for his personal expenses. These expenses included a $22,000 down payment on a new home, $14,597.85 for furniture and draperies in the new home, and $981.77 for landscaping. In addition, this improper use of partnership funds allowed Weiner during this time of a "cash shortage" to make payments to New York Life Insurance Company in the amount of $586.88 per month, paint his old house, pay his 1984 income taxes, pay for a home security system, pay for Kansas City Royals 1985 World Series tickets and Kansas City Royals 1986 season tickets, and pay for a VCR system.

10. In all, Weiner "borrowed" $64,575 from the partnership. Weiner also failed to make timely payments of partnership assessments totaling $60,154.62. Over this same time period, Weiner twice made payments to defray these "borrowings" and partnership assessments in the total amount of $68,746.59 (*See plaintiffs' exhibit 8 attached*). In all, this left a total deficit $55,977.83 in Weiner's account, at the time of filing bankruptcy.

11. Weiner "felt uncomfortable" with the situation of borrowing funds from Pro-Tax, and, in fact, received a loan from relatives in order to make the repayments shown on plaintiffs' exhibit 8. However, at no time prior to February of 1987 did Weiner advise his partners of the "borrowings."

## CONCLUSIONS OF LAW

The plaintiffs seek to except Weiner's debt from discharge under, alternatively, section 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; section 523(a)(6) for willful and malicious injury by the debtor to another entity or to the property of another entity; or section 523(a)(2)(A) for obtaining money by false pretenses, false representations, or actual fraud.

A. *Fraud or Defalcation While Acting in a Fiduciary Capacity.*

Section 523(a)(4) excepts from discharge any debt:

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

Under this section, the plaintiffs must prove by clear and convincing evidence the following: (1) that Weiner committed fraud or defalcation; (2) while acting in a fiduciary capacity; or (3) Weiner committed embezzlement or larceny.

This Court finds that the plaintiffs clearly proved that Weiner committed fraud or defalcation. Weiner, in his capacity as a certified public accountant and through his designation as Administrative

Partner and Tax Matter Partner, was in effect the sole managing partner of Pro-Tax. Pursuant to the partnership agreement, Weiner received funds on behalf of the partnership earmarked for various investments. Weiner then deliberately used the partnership funds for his own personal purposes and without the knowledge or consent of his partners.

However, an issue arises over whether Weiner was a "fiduciary" within the meaning of section 523(a)(4). The meaning of the term "fiduciary" is an issue of federal law. *See Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934). Federal courts have found that the general definition of fiduciary—a relationship involving confidence, trust and good faith—is too broad in the dischargeability context. *In re Angelle,* 610 F.2d 1335, 1338–39 (5th Cir.1980). Consequently, federal courts have limited the fiduciary relationship contemplated in section 523(a)(4) to one arising out of a pre-existing express or technical trust, not implied, resulting, or constructive trusts. *In re Romero,* 535 F.2d 618 (10th Cir.1976); and *In re Talcott,* 29 B.R. 874 (Bankr.D. Kan.1983). The trust giving rise to the fiduciary relationship must be imposed prior to any wrongdoing; the debtor must have been a "trustee" before the wrong and without reference to it. *Davis,* 293 U.S. at 333, 55 S.Ct. at 153; *In re Ragsdale,* 780 F.2d 794, 796 (9th Cir.1986) (trusts *"ex maleficio"* are not included in section 523(a)(4)).

Although the concept of fiduciary is to be narrowly defined as a matter of state law, state law is still a very important factor in determining when a technical or express trust exists. *Id. See also In re Black,* 787 F.2d 503, 506 (10th Cir.1986).

In the present case, the plaintiffs assert that, under the Kansas Uniform Partnership Act and under Kansas case law, all Kansas partners are fiduciaries. The Kansas Uniform Partnership Act does provide that a partner is a fiduciary. Kan.Stat. Ann. section 56–321(a) states:

Partner accountable as a fiduciary, when. (a) Every partner must account to the partnership for any benefit, and hold as trustee for the profits derived by him or her without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him or her of its property.

This Court finds that section 56–321(a) of the Kansas Uniform Partnership Act is not determinative of the issue. The statute does not create a technical or express trust. Rather, under this statute, the trust arises only when the partner derives profits without the consent of the partnership; it is the sort of trust *ex maleficio* not included within the purview of section 523(a)(4). The Honorable James A. Pusateri, another Bankruptcy Judge from the District of Kansas, has come to the same conclusion. *In re Novak,* 97 B.R. 47, (Bankr.D. Kan. 1987). Most federal courts interpreting similar partnership acts concur with this position. *See In re Ragsdale,* 780 F.2d 794, 796 (9th Cir.1986); *In re Braudis,* 86 B.R. 1001 (Bankr.W.D.Mo.1988); *In re Hurbace,* 61 B.R. 563 (Bankr.W.D.Tex. 1986); and *In re Holman,* 42 B.R. 848 (Bankr.E.D.Mo.1984). *But see In re Kraus,* 37 B.R. 126, 130 (Bankr.E.D.Mich. 1984). In addition, the leading authority on bankruptcy concurs with this position. *Collier on Bankruptcy* states: "Thus, unless there be some additional fact, section 523(a)(4), insofar as it relates to a debtor acting in a fiduciary capacity, does not apply to frauds of agents, bailees, brokers, factors, *partners,* and other persons similarly situated." 3 *Collier on Bankruptcy* 523.14[1][c] (15th ed. 1988) (emphasis added).

However, as the above quote from *Collier* points out, there are exceptions to the general proposition that partners are not fiduciaries for purposes of section 523(a)(4). In some instances, the state case law has raised the duties of partners beyond those required by the literal wording of the statute. *See Ragsdale,* 780 F.2d at 796 (The Ninth Circuit found that California case law had made partners "trustees" in all proceedings in connection with the partner-

ship). This Court finds, however, that Kansas courts have not raised the fiduciary duties of a partner beyond that of the statute. *Novak*, 97 B.R. at 59.

Secondly, the general rule is qualified by the phrase "unless there is some additional fact." This qualification means that, although partners are not ordinarily fiduciaries, if there are some additional facts in a particular case that evidence the existence of an express or technical trust, then the courts can find that this particular partner is a fiduciary within the meaning of section 523(a)(4).

In the present case, this Court finds that there are several additional facts that show that Weiner was acting in a "fiduciary" capacity with the other partners of Pro–Tax within the strict sense of the term as used in section 523(a)(4). First, when Weiner initially set up Pro–Tax as an investment vehicle, he held himself out to the other partners as both a licensed attorney and a certified public accountant. It is logical that the plaintiffs considered Weiner's position in the partnership to be one of the highest trust due to his licensure in these trusted professions. Second, Weiner was no ordinary partner by any means. Weiner was the *sole* managing partner of Pro–Tax through his title of "Administrative Partner" or "Tax Matters Partner." Finally, the relationship between Weiner and his partners is characterized by all the typical attributes of a technical trust. He had all those responsibilities which are commonly associated with a trustee, including those of collecting, segregating, investing, dispersing, and accounting for the funds.

Since this Court has now found that Weiner was a "fiduciary" and that he committed fraud or defalcation in his capacity as a fiduciary, the only remaining question is the amount damages. In calculating the damages, the parties use different methods that result in very different amounts.

Weiner contends that any amount, if found non-dischargeable, should be limited to $17,500. This amount roughly approximates Weiner's "borrowings" after his repayments on October 17, 1985, and December 24, 1985. This method presumes that all of Weiner's repayments should be applied to "borrowings" and not assessments.

The plaintiffs, on the other hand, assert that the damages should be calculated by using the "first-in, first-out" (FIFO) method of invoice accounting and applying Weiner's repayments to the oldest items first. Under the FIFO method, Weiner's repayments to Pro–Tax on October 17, 1985, and December 24, 1985, totaling $65,000 would be applied against the oldest items first, starting with the June 19, 1984, Cabot assessment (*See plaintiff's exhibit 8*), without regard to whether the repayment is applied against "borrowings" or assessments. The $65,000 repayment would extinguish all debts through June 3, 1985, but for a balance of $6,555.55. The $6,555.55 balance would constitute the remaining balance of the last item through July 3, 1985, the $22,000 "borrowing" for the house down payment. Under the plaintiff's FIFO method, the Court would then add to the $6,555.55 balance all "borrowings" after this date, totaling $38,575. Thus, the total nondischargeable debt would be $45,130.55. In addition, the plaintiff requests interest at 10% per annum of $10,580.95.

Except for this additional 10% interest of $10,580.95, this Court finds that the plaintiffs' FIFO method is the appropriate method to use in calculating the damages. According to Weiner's own testimony, the FIFO method is the most typical method of applying payments in the business world. Further, this method is proper because it limits Weiner's non-dischargeable debt to the unpaid "borrowings" and does not include any amount for dischargeable unpaid partnership assessments. However, this Court finds that the awarding of interest is not proper until after the judgment has been entered.

### B. *Other Counts.*

As stated earlier, the plaintiffs brought this action under several other theories besides fraud or defalcation while acting in a fiduciary capacity, including: embezzlement under section 523(a)(4); willful and

malicious injury under section 523(a)(6); and obtaining money through false representations under section 523(a)(2)(A). All these counts pertain to the same underlying debt as previously discussed. Since this Court has just found in favor of the plaintiffs on the first count of fraud or defalcation while acting in a fiduciary capacity, this Court finds that the rest of the counts are now moot.

IT IS, THEREFORE, BY THE COURT, ORDERED That judgment be for the plaintiffs and against the debtor/defendant, Jeffrey Michael Weiner, in the amount of $45,-130.55 plus the legal rate of interest from the date of this order.

IT IS FURTHER, BY THE COURT, ORDERED That the $45,130.55 debt is nondischargeable pursuant to section 523(a)(4).