**In re James W. STANDARD, Debtor.**

**William P. BLASHKE; William E. Cherry; Dr. Carl Dann, III; K. Bruce Jones; Charles W. Leizear; James M. Lyster; Phillip H. Searcy; and Michael A. Stern, Plaintiffs,**

v.

**James W. STANDARD, Defendant.**

**Bankruptcy No. 89–08196.**
**Adv. No. 90–0101A.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Jan. 4, 1991.

446

Myles E. Eastwood, Jones, Brown & Brennan, Atlanta, Ga., for plaintiffs.

Robert W. Scholz, Dietrick, Evans, Scholz & Williams, Atlanta, Ga., for defendant.

## OPINION

JOYCE BIHARY, Bankruptcy Judge.

This adversary proceeding is before the Court on cross motions for summary judgment. The plaintiffs are eight individuals who seek a determination that judgments entered in their favor against defendant-debtor James W. Standard ("Standard" or

"debtor") are not dischargeable in bankruptcy under 11 U.S.C. § 523(a)(4) or 11 U.S.C. § 523(a)(6). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

The key issues are whether debtor, as a general partner in a Georgia limited partnership, was a "fiduciary" to the plaintiff limited partners within the meaning of § 523(a)(4) of the Bankruptcy Code and whether the doctrine of collateral estoppel requires a summary judgment on plaintiffs' § 523(a)(6) claims. The debts in question arise out of judgments totalling $328,-100.00 plus interest entered by the United States District Court on September 6, 1989, against James W. Standard. The judgments were based on special verdicts which will be discussed herein.

The following facts giving rise to the claims are not in dispute. On July 26, 1982, Mr. Standard formed a Georgia limited partnership called Georgia Christmas Trees 1982, Ltd. ("the Partnership"). The general partners of the Partnership were Mr. Standard and his wholly owned corporation. The objective of the Partnership was to grow pine trees to sell as Christmas trees. Each of the plaintiffs received a private placement memorandum prepared by Mr. Standard and decided to invest in the Partnership. Each plaintiff contributed $20,000.00 and executed a $20,000.00 letter of credit.

The Partnership business was to be conducted by Thomas H. Perdue and his company. In a report dated October 6, 1983, Mr. Standard advised plaintiffs that business was not proceeding as expected. On or about January 31, 1985, Mr. Standard advised plaintiffs, among other things, that the Partnership had inadequate funds to continue operations, and in January or February of 1985, he requested additional funds for the operation of the business through the sale of supplemental units. One of the plaintiffs, Charles W. Leizear, invested an additional $8,000.00 in April, 1985, and purchased a supplemental unit. On November 5, 1985, Mr. Standard informed plaintiffs that Mr. Perdue had failed to carry out his responsibilities. The Partnership business failed during late 1985 and early 1986. Mr. Standard informed plaintiffs by letter dated February 18, 1986, that the Partnership had no funds to operate the firm or to pay expenses including a bank loan guaranteed by the letters of credit executed by plaintiffs.

Plaintiffs filed a complaint in the District Court on June 9, 1986, alleging violations of the federal and state securities laws, common law fraud, breach of fiduciary duty and breach of contract. The action was styled *"William P. Blashke; William E. Cherry; Dr. Carl Dann, III; K. Bruce Jones; Charles W. Leizear; James M. Lyster; Phillip E. Searcy and Michael A. Stern, v. James W. Standard,* 1:86–CV–1294–JOF United States District Court, Northern District of Georgia, Atlanta Division" ("the Civil Action").

On July 31, 1989, immediately prior to the scheduled trial of the Civil Action, Mr. Standard filed a petition seeking relief under Chapter 13 of the Bankruptcy Code. The Bankruptcy Court entered an Order lifting the automatic stay to permit plaintiffs to prosecute and try the Civil Action. The stay remained in effect to prevent any recovery or collection on any judgment obtained against debtor.

The Civil Action was tried before a jury in August of 1989,[1] and on September 6, 1989, the District Court entered judgments against debtor in favor of the following plaintiffs in the amounts listed plus interest at 7.75% per annum:

William P. Blashke for $40,000.00

William E. Cherry for $40,000.00

Dr. Carl Dann, III for $40,000.00

K. Bruce Jones for $40,000.00

Charles W. Leizear for $48,000.00

James M. Lyster for $40,000.00

Phillip E. Searcy for $40,000.00

Michael A. Stern for $40,000.00

The Civil Action was submitted to the jury on special verdicts with numbered questions on the claims for Georgia common law fraud, the federal and state secu-

---

1. Debtor was not represented by counsel at the trial of the Civil Action.

rities law claims, and the claims for breach of fiduciary duty relating to the initial offering. The jury answered "no" to the following statement on verdict forms with respect to all eight plaintiffs: "Plaintiff could not have discovered any alleged defects in the private placement memorandum prior to June 9, 1984, exercising reasonable diligence." As a result of that finding, plaintiffs did not prevail on their claims that debtor violated federal or state securities law in the initial offering, as those claims were barred by applicable statutes of limitation.

With respect to plaintiffs' claims of Georgia common law fraud in the initial offering, the jury found that debtor made the following material misrepresentations:

(1) [t]hat Christmas trees had a 95% survival rate;

(2) [t]hat the owner of each limited partnership unit could expect to earn between 1985 and 1991 a total cash profit and a net tax benefit of approximately $74,800.00; and

(3) [t]hat Mr. Perdue or one of his partnerships or corporations would make a $30,000.00 *cash* loan to the [P]artnership which would be used to fund the operation in 1983, the first full year of operation.

The jury found that debtor had *not* made the following alleged material misrepresentations:

(1) [t]hat the first harvest would occur in 1984 and that subsequent harvests would continue thereafter each year from 1985 through 1991;

(2) [t]hat the growing climate where the farm was located was conducive to the growth of white pine;

(3) [t]hat there were no internal financial controls set up and utilized to regulate Perdue's use of [P]artnership funds.

However, after finding that debtor made three of the six alleged misrepresentations, the jury found that debtor did not make the misrepresentations with knowledge of their falsity or with reckless indifference to their truth. As a result of that finding, plaintiffs did not prevail against debtor on their claims for Georgia common law fraud.

With respect to plaintiffs' state law claim for "breach of fiduciary duty," the jury found that debtor did breach his fiduciary duty by "(a) [o]btaining fees not due him;" "(b) not exercising the care and skill of an ordinarily prudent person in managing the [P]artnership;" and "(c) not revealing material facts to the [P]artnership in a timely fashion." Although the jury received instructions from the Court regarding damages for the claim of breach of fiduciary duty, the special verdict form did not contain a question regarding actual damages. Judgments were entered for the full amount of plaintiffs' investments.

The jury also found that debtor acted in bad faith so as to permit a court award of attorney's fees and expenses. The judgments entered provide that they are for costs, "plus attorneys fees and expenses to be determined by the Court." However, the record before this Court is silent as to any such determination, and counsel have indicated that the District Court has the matter under submission.

Finally, a number of additional questions were submitted to the jury regarding plaintiff Leizear's claims for Georgia common law fraud and violations of federal and state securities laws arising out of his purchase of a supplemental unit. The jury answered all these questions in favor of plaintiff Leizear, except that the jury found plaintiff Leizear was not entitled to punitive damages.

This bankruptcy case was converted from a case under Chapter 13 to a case under Chapter 7 on November 21, 1989. Plaintiffs then filed this adversary proceeding, alleging that their judgment claims should be declared nondischargeable under 11 U.S.C. § 523(a)(4) and § 523(a)(6). Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny," and § 523(a)(6) excepts from discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(4) and (6) (1982).

Debtor has filed a motion to dismiss the adversary proceeding or, in the alternative,

a motion for summary judgment, arguing that debtor was not a "fiduciary" within the meaning of 11 U.S.C. § 523(a)(4) and that plaintiffs' allegations do not amount to fraud or defalcation required under § 523(a)(4) or willfulness or malice required under § 523(a)(6). Plaintiffs filed a response to debtor's motion and their own motion for summary judgment. In plaintiffs' motion, they argue that the doctrine of collateral estoppel requires a summary judgment in their favor and a determination that the judgment debts are not dischargeable under both § 523(a)(4) and § 523(a)(6).

## I. *Plaintiffs' Claims under § 523(a)(6)*

■ Section 523(a)(6) of the Bankruptcy Code renders any debt "for willful and malicious injury by the debtor" nondischargeable. 11 U.S.C. § 523(a)(6). The term "willful" means intentional and deliberate and cannot be established merely by applying a recklessness standard, and "malicious" means wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill will. *Lee v. Ikner (In re Ikner)*, 883 F.2d 986 (11th Cir.1989); *Chrysler Credit Corporation v. Rebhan (In re Rebhan)*, 842 F.2d 1257, 1263 (11th Cir.1988); *Sunco Sales, Inc. v. Latch (In re Latch)*, 820 F.2d 1163, 1166 n. 4 (11th Cir.1987). A finding of reckless disregard will not satisfy the "willful" requirement, but is sufficient to establish malice, and malice can be implied or constructive. *Rebhan*, 842 F.2d at 1263. A party seeking to except a debt from discharge under § 523(a)(6) must prove willfulness and maliciousness by clear and convincing evidence. *Rebhan*, at 1262; *Chang v. Daniels (In re Daniels)*, 91 B.R. 981 (Bankr.M.D.Fla.1988).

Plaintiffs argue that they are entitled to a summary judgment on their § 523(a)(6) claim by application of the doctrine of collateral estoppel. Collateral estoppel under federal law requires the following:

(1) the issue at stake must be identical to the one involved in the prior litigation;
(2) the issue must have been actually litigated in the prior litigation; and

(3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action.

*Halpern v. First Georgia Bank (In re Halpern)*, 810 F.2d 1061, 1064 (11th Cir. 1987) (quoting *Miller v. Held (In re Held)*, 734 F.2d 628, 629 (11th Cir.1984)).

■ To determine whether the issues in this dischargeability action are identical to and were actually litigated and decided in the Civil Action, it is necessary to examine the charges given to the jury and the jury's specific findings. With respect to the claims against debtor arising out of the initial offering, the jury found that debtor did not make the misrepresentations with knowledge of their falsity or with reckless indifference to their truth, and thus debtor was not liable for common law fraud. This finding by the jury amounts to a finding that debtor's conduct in the sale of the initial partnership units was not "willful" within the meaning of § 523(a)(6).

■ Plaintiffs argue that the jury finding in their favor on the claim for breach of a fiduciary duty involved a finding of willful and malicious conduct. The record does not support plaintiffs' argument. The jury instructions on that claim resemble instructions for a negligence claim rather than a willful or intentional tort. The District Court charged: "If you find that Mr. Standard failed to act in good faith in any one of these particulars *or that he failed to act with that degree of skill and care of an ordinarily prudent person*, then you may award each partner who has carried his burden of proof damages on account of that failure." Record at 890, *Blashke*. (emphasis added).

■ In a supplemental brief, plaintiffs argue that the charges and verdicts on the counts for breach of fiduciary duty and the separate securities fraud claims pursued by plaintiff Leizear for his $8,000.00 purchase of a supplemental unit should be read together to result in a determination that the verdicts in favor of *all* the plaintiffs are based on a finding of willful and malicious conduct under § 523(a)(6). This argument is also without merit. The separate fraud

claims pursued by Mr. Leizear were not available to the other plaintiffs, because they did not purchase any additional units. The jury found against plaintiffs on the fraud claims relating to their $40,000.00 investments. The claim for breach of fiduciary duty was not a claim based on willful and malicious conduct, and the verdict did not contain findings of such conduct.

▪ Plaintiffs also argue that the jury finding that debtor acted in bad faith amounts to a finding that debtor's conduct was willful and malicious within the meaning of § 523(a)(6). The Court disagrees, since the District Court's instructions on bad faith do not equate bad faith with willful or malicious conduct. Furthermore, as stated above, the question to the jury on bad faith was submitted to permit a court award for attorney's fees and costs, and plaintiffs have not obtained a judgment from the District Court for any attorney's fees and costs based on this finding.

Finally, plaintiffs have not suggested that they want to or are entitled to retry their claim in the Bankruptcy Court. They have submitted the case on the jury instructions and the verdicts, and they do not allege any claim of wrongdoing other than that which was alleged in the Civil Action. Based on the portions of the record presented, this Court concludes that the judgments in favor of each plaintiff in the amount of $40,000.00 are not debts for willful and malicious injuries under § 523(a)(6).

▪ We now turn to plaintiff Leizear's claim with respect to his $8,000.00 purchase of a supplemental unit. The jury's findings in Mr. Leizear's favor on the claims for common law fraud and securities laws violations are based on instructions that are virtually identical to the meaning of "willful" under § 523(a)(6). However, there are several difficulties with plaintiff Leizear's motion for summary judgment on this claim. First, from the record before this Court, it is difficult to locate or infer any jury finding of "malice" as required

under § 523(a)(6). Second, the burden of proof in a § 523(a)(6) claim is one of clear and convincing evidence, while the burden of proof charged in the Civil Action was that of a preponderance of the evidence.[2] Furthermore, the jury declined to award Mr. Leizear any punitive damages with respect to the supplemental unit. The instruction on punitive damages was as follows:

> If you find under any of those three counts that Mr. Standard's ... acts were willful and that his conduct was intentional, then you *may* award punitive damages. You *may* also award them if Mr. Standard's conduct evidenced an entire want of care or a conscious indifference to the consequences of his acts. The measure of damages for punitive or exemplary damages is the enlightened conscience of fair and impartial jurors.

Record at 893–894 (emphasis added).

This instruction contains language virtually identical to the definitions of "willful" and "malicious" under § 523(a)(6). The jury's decision not to award Mr. Leizear punitive damages raises the possibility that the jury found that the conduct was not willful and malicious and precludes summary judgment in plaintiff Leizear's favor.

Debtor argues that the jury's decision not to award Mr. Leizear any punitive damages means that the jury necessarily found that the conduct was not willful and malicious. A close reading of the instruction shows that this is not the case. If the instruction had required an award of punitive damages upon a finding of intentional and malicious conduct, debtor would be correct and we could infer that the jury had not found willful and malicious conduct. However, the instruction here was permissive, and it is possible that the jury could have found willful and malicious conduct and still declined to award punitive damages. Unfortunately, it is impossible from the record presently before the Court to determine whether the jury found the conduct to be willful and malicious or whether

---

**2.** *See Henson v. Garner (In re Garner),* 881 F.2d 579 (8th Cir.1989), *cert. granted sub nom. Grogan v. Garner,* —— U.S. ——, 110 S.Ct. 1945, 109 L.Ed.2d 308 (1990), No. 89–1149 (argued Oct. 29, 1990).

the jury found that the conduct was not willful or malicious. Thus, neither Mr. Leizear nor debtor is entitled to a summary judgment on Mr. Leizear's claim that his $8,000.00 judgment relating to the purchase of a supplemental unit is nondischargeable under § 523(a)(6).

## II. *Plaintiffs' Claims under § 523(a)(4)*

■ Plaintiffs contend that the judgments are for "defalcation while acting in a fiduciary capacity" and are thus within the exception to discharge found in § 523(a)(4) of the Bankruptcy Code. Debtor argues that as a general partner, he was not a "fiduciary" to the plaintiff limited partners as that term is used in § 523(a)(4) and that he is entitled to a summary judgment on these claims. After reviewing judicial interpretations of the word "fiduciary" in § 523(a)(4) and predecessor bankruptcy statutes and relevant Georgia law, the Court concludes that debtor here did not have a fiduciary relationship with the plaintiffs in the strict and narrow sense as that the term is used in § 523(a)(4).

While many of the substantive provisions of the Bankruptcy Code enacted in 1978 are new, the provision that a debt for defalcation while acting in a fiduciary capacity is not dischargeable in bankruptcy has been a part of the bankruptcy laws of the United States for nearly one hundred fifty years. In the Bankruptcy Act of 1841,[3] Section 1 provided, in pertinent part, as follows:

> All persons whatsoever, residing in any State, District or Territory of the United States, owing debts, which shall not have been created in consequence of a *defalcation* as a public officer; or as executor, administrator, guardian or trustee, or *while acting in any other fiduciary capacity,* ... shall be deemed bankrupts

within the purview of this act, and may be so declared accordingly by a decree of such court; ...

Bankruptcy Act of 1841, § 1, 5 Stat. 440 (Aug. 19, 1841) *repealed by* 5 Stat. 614 (Mar. 3, 1843) (emphasis added).[4]

The Bankruptcy Act of 1867 provided that certain debts were not discharged under the Act, and the first clause of Section 33 of that Act provided, in pertinent part, as follows:

> And be it further enacted, *That no debt created by* the fraud or embezzlement of the bankrupt or by his *defalcation* as a public officer, or *while acting in any fiduciary character, shall be discharged under this act;* ...

Bankruptcy Act of 1867, ch. 176, § 33, 14 Stat. 517 (Mar. 2, 1867) (as amended (June 22, 1874)); *repealed by* Act of June 7, 1878, 20 Stat. 99 (emphasis added).

The Bankruptcy Act of 1898 expanded the kinds of debts excepted from discharge and contained Section § 17 entitled "Debts not Affected by a Discharge". Section 17(a)(4) provided as follows:

> A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as ...
>
> (4) were created by his fraud, embezzlement, misappropriation, or *defalcation while acting* as an officer or *in any fiduciary capacity.*

Bankruptcy Act of 1898, 11 U.S.C. § 35(a)(4) (July 1, 1898) (current version at 11 U.S.C. § 523(a)(4) (1982)) (emphasis added).

While numerous amendments were made to § 17 of the Bankruptcy Act of 1898, including amendments resulting from the Chan-

---

**3.** The first law to establish a uniform system of bankruptcy throughout the United States was enacted in 1800 and repealed in 1803. It did not contain a provision comparable to § 523(a)(4) of the current bankruptcy law. Bankruptcy Act of 1800, 2 Stat. 19 (Apr. 4, 1800) *repealed by* 2 Stat. 248 (Dec. 19, 1803).

**4.** The Supreme Court in the case of *Chapman v. Forsyth,* 43 U.S. 87, 88, 2 How. 202, 207, 11 L.Ed. 236 (1844) explained that the exception in the first section of the Bankruptcy Act of 1841 applied to the debts and not to the person. Thus, while a cold reading of the statute today might suggest that the existence of fiduciary debts made a person ineligible for bankruptcy

dler Act of 1938, this subsection (4) remained unchanged.[5]

The section on exceptions to discharge in our present law, enacted in 1978, is found in 11 U.S.C. § 523(a)(4) and provides, in pertinent part, as follows:

> A discharge ... does not discharge an individual debtor from any debt—
>
> (4) for fraud *or defalcation while acting in a fiduciary capacity*, embezzlement, or larceny;

11 U.S.C. § 523(a)(4) (1982) (emphasis added).

Thus, it is apparent that in all the bankruptcy laws of these United States since 1841, debts for defalcation while acting in a fiduciary capacity were excepted from discharge.

The Supreme Court has consistently interpreted "fiduciary" in these statutes in a narrow and limited fashion. In *Chapman v. Forsyth*, 43 U.S. 87, 2 How. 202, 11 L.Ed. 236 (1844), the Supreme Court held that a factor who withholds money received for property sold by him on account of others was not indebted in a fiduciary capacity within the meaning of the "bankrupt law" of 1841. The Court stated:

> If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and, indeed, all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the 1st section of the act.
>
> The cases enumerated, "the defalcation of a public officer," "executor," "administrator," "guardian," or "trustee," are not cases of implied but special trusts, and the "other fiduciary capacity" mentioned, must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within the act.

*Id.* 43 U.S. at 89, 2 How. at 208.

In *Hennequin v. Clews*, 111 U.S. 676, 4 S.Ct. 576, 28 L.Ed. 565 (1883), the Supreme Court held that when one appropriated securities deposited with him as collateral for a loan and then failed or refused to return the securities after the loan had been paid, the resulting debt was not a fiduciary debt within the meaning of § 33 of the Bankruptcy Act of 1867. Stating that the question had been considered under the Act of 1841 in *Chapman v. Forsyth*, the Court concluded that one who held collateral for a debt was in no sense a trustee and if his contract binds him to return collateral and he fails to do so, it is only a breach of contract, not a breach of trust. The Court explained that the English courts regarded many transactions as frauds or breaches of trust under their statutes which "we do not hold to be such under our bankrupt acts" and stated "[p]erhaps the liberal construction made in favor of the certificate of discharge in this country is due to the peculiar modes and habits of business prevailing amongst our people." *Hennequin* at 683, 4 S.Ct. at 580.

In other cases, the Supreme Court construed the meaning of "fiduciary" in § 33 of the Bankruptcy Act of 1867 and repeated that the term was limited in scope and did not include all relations or agreements where one person reposes confidence or trust in another. *See Noble v. Hammond*, 129 U.S. 65, 70, 9 S.Ct. 235, 237, 32 L.Ed. 621 (1889), (where the Court stated that "[e]ven if the agreement between the parties might be construed as creating a trust in some sense, it was clearly not such a trust as comes within the provisions of the bankrupt act"). *See also Upshur v.*

---

relief, this was not the case and fiduciary debts were merely excepted from discharge.

**5.** Reviewing various versions of the Act of 1898, it appears that the comma after the word "misappropriation" in § 17(a)(4) was deleted in 1938. However, the comma had no special or legal significance, and the words "while acting as an officer or in any fiduciary capacity" related back to the preceding words of the subsection. *See Crawford v. Burke*, 195 U.S. 176, 192, 25 S.Ct. 9, 12, 49 L.Ed. 147 (1904).

*Briscoe,* 138 U.S. 365, 375, 11 S.Ct. 313, 316, 34 L.Ed. 931 (1891) (The *Upshur* court held that "[w]ithin the meaning of the exception in the bankruptcy act, a debt is not created by a person while acting in a 'fiduciary character,' merely because it is created under circumstances in which trust or confidence is reposed in the debtor, in the popular sense of those terms.")

The Supreme Court construed "fiduciary" in § 17(a)(4) of the 1898 Act and continued to hold that it was limited to a trustee in the strict and narrow sense. *Davis v. Aetna Acceptance Company,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), and *Crawford v. Burke,* 195 U.S. 176, 25 S.Ct. 9, 49 L.Ed. 147 (1904) (where a broker carrying stocks on margin who sold the stocks and did not pay over the proceeds to his principal was not indebted in a "fiduciary capacity" within the meaning of § 17(a)(4) of the 1898 Act, and the debt was dischargeable).

In *Davis,* the Supreme Court considered the case of a car dealer who borrowed funds to purchase cars and who delivered to the lender mortgages, trust receipts and agreements not to sell the cars except with the consent of the lender. When the dealer sold the cars, did not forward the proceeds to the lender and then went bankrupt, the Court held he was not a "fiduciary" within the meaning of § 17(a)(4) of the 1898 Act, so the debt was dischargeable. In so holding, the Court noted that the meaning of the words "fiduciary capacity" has been "fixed by judicial construction for very nearly a century." *Id.* 293 U.S. at 333, 55 S.Ct. at 153. The *Davis* court reaffirmed the reasoning in *Upshur* and further held: "It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex maleficio.* He must have been a trustee before the wrong and without reference thereto." *Id.*

Courts interpreting "fiduciary" in § 523(a)(4) of the Bankruptcy Code have continued to hold that the trust on which the fiduciary relationship relies must be an express or technical trust which existed prior to the act creating the debt, not a trust *ex maleficio,* that may be imposed because of the very act of wrongdoing out of which the contested debt arose. *See Kraemer v. Crook,* 94 B.R. 207, 208 (N.D. Ga.1988), *aff'd. mem.* 873 F.2d 1406 (11th Cir.1989) (citing *Angelle v. Reed (In re Angelle),* 610 F.2d 1335 (5th Cir.1980)). The question of who is a fiduciary for purposes of § 523(a)(4) is one of federal law. *Angelle,* at 1341. However, state statutes can make certain parties fiduciaries "by imposing trust-like duties, such as segregating accounts, on those who enter into certain kinds of contracts." *Id.* at 1340.

Plaintiffs argue that two Georgia statutes, O.C.G.A. § 14–8–21(a) and O.C.G.A. § 23–2–58, impose a fiduciary duty on a general partner such that any judgment resulting from a breach of that duty is not dischargeable under § 523(a)(4). Section 14–8–21(a) of the Georgia Code is a part of the Uniform Partnership Act [6] and provides as follows:

(a) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

O.C.G.A. § 14–8–21(a) (1989).

Section 23–2–58 of the Georgia Code entitled "Confidential relations defined" provides as follows:

Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship

---

6. This provision of the Uniform Partnership Act is applicable to general partners in a limited partnership by virtue of O.C.G.A. § 14–9A–70 (1989).

between partners, principal and agent, etc.

O.C.G.A. § 23–2–58 (1982).

A number of courts have considered the provision of the Uniform Partnership Act identical to O.C.G.A. § 14–8–21(a) and have concluded that this statute does not make a partner a fiduciary under § 523(a)(4). *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986);[7] *Moore v. Holman (In re Holman)*, 42 B.R. 848, 850 (Bankr.E.D.Mo. 1984); *Donohoe v. Hurbace (In re Hurbace)*, 61 B.R. 563, 566 (Bankr.W.D.Tex. 1986); *Medved v. Novak (In re Novak)*, 97 B.R. 47, 59 (Bankr.D.Kan.1987); *Reiter v. Napoli (In re Napoli)*, 82 B.R. 378 (Bankr. E.D.Pa.1988); *Arnett v. Weiner (In re Weiner)*, 95 B.R. 204, 206 (Bankr.D.Kan. 1989). The reasoning of these cases is persuasive, and this Court agrees that O.C. G.A. § 14–8–21(a) does not establish an express or technical trust. The trust under this statute arises only when the partner derives profits without partnership consent. Thus, the trust created is a trust *ex maleficio* and does not create a fiduciary relationship within the meaning of § 523(a)(4). This is in accord with *Betz v. Gay (In re Gay)*, 117 B.R. 753 (Bankr.M.D. Ga.1989), where the bankruptcy court in the Middle District of Georgia held that O.C.G.A. § 14–8–21 and O.C.G.A. § 14–8–14 do not create the fiduciary relationship between partners required by § 523(a)(4).

The cases relied on by plaintiffs for the proposition that O.C.G.A. § 14–8–21(a) creates an express trust are not persuasive. *Holmes v. Kraus (In re Kraus)*, 37 B.R. 126 (Bankr.E.D.Mich.1984) has been criticized by several courts which have expressly declined to follow it.[8] The other two cases cited by plaintiffs, *Inahara v. Harris (In re Harris)*, 458 F.Supp. 238 (D.Or.1976) *aff'd. mem.*, 587 F.2d 451 (9th Cir.1978), *cert. denied*, 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed.2d 285 (1979) and *Landvest Associates v. Owens (In re Owens)*, 54 B.R. 162 (Bankr.D.S.C.1984) simply follow *Kraus* without any reasoning on this point. *Owens*, like *Kraus*, has been criticized for failing to acknowledge the body of Supreme Court law on the meaning of "fiduciary."

It should be noted that even if the Court concluded that O.C.G.A. § 14–8–21(a) created an express trust with regard to profits derived by a partner without the consent of the other partners, the record before the Court is unclear as to what portion, if any, of the judgment awarded in the Civil Action is attributable to any violation of this statutory provision. In the special verdict form, the jury found three instances where debtor breached a state law fiduciary duty: (1) by obtaining fees not due him; (2) by not exercising the care and skill of an ordinarily prudent person in managing the partnership; and (3) by not revealing material facts to the partnership in a timely fashion. Only the first of these findings arguably fits the language and proscription of O.C.G.A. § 14–8–21(a), and nothing in the verdict form reveals what amount of fees were obtained by debtor.

The other Georgia statute relied on by plaintiffs, O.C.G.A. § 23–2–58, also does not create the kind of trust necessary to create a fiduciary relationship under

---

7. The law in the Ninth Circuit is not altogether clear. The Court in *Haller* in 1986 held that California partners are fiduciaries within the meaning of § 523(a)(4), but the Court's holding was based on a determination that California courts have made all partners trustees. The Court specifically stated that under the California statute identical to O.C.G.A. § 14–8–21(a), the trust arises only when the partner derives profits without partnership consent and that "it is the sort of trust *ex maleficio* not included within the purview of § 523(a)(4)." *Id.* at 796. However, the very next year, the Ninth Circuit held that the identical statute in Washington and Washington case law made a joint venturer in Washington a "fiduciary" within the meaning of § 523(a)(4). *Lewis v. Short (In re Short)*, 818 F.2d 693, 695 (9th Cir.1987). The Court in *Short* did not acknowledge that in *Haller* it held that the same statute did not create such a trust.

8. *See Holman*, 42 B.R. at 851 (criticizing *Kraus* for its failure to recognize *Chapman v. Forsyth* ). *Accord Huhman v. Braudis (In re Braudis)*, 86 B.R. 1001, 1004 (Bankr.W.D.Mo.1988). *See also Weiner*, 95 B.R. at 206; *Napoli*, 82 B.R. at 382; *Novak*, 97 B.R. at 59 (declining to follow *Kraus*). *But see Leeb v. Guy (In re Guy)*, 101 B.R. 961, 991 (Bankr.N.D.Ind.1988) (agreeing with the conclusion reached in *Kraus*).

§ 523(a)(4). It is a general statute found in the equity title of the Georgia Code where fraud is set out as one ground for equitable relief. The statute generally describes certain relationships as confidential, the result of which is that parties in those relationships have greater reason to rely on representations of the other party. Nothing in this statute creates a technical or express trust or imposes trust-like duties of the sort described in *Angelle.*

Some courts have found that case law in their states has raised the duties of a partner to a "fiduciary" within the meaning of § 523(a)(4). *Haller,* 780 F.2d at 796; *Short,* 818 F.2d at 695; *Compare Hurbace,* 61 B.R. 563 (Bankr.W.D.Tex.1986) (stating that Texas courts impose the type of fiduciary duty described in *Haller* only in the case of managing partners vis-a-vis general partners).

Plaintiffs seem to argue that Georgia case law creates a trust relationship, citing *Allen v. Sanders,* 176 Ga.App. 647, 337 S.E.2d 428 (1985) and *Davis v. McKibben,* 50 Ga.App. 608, 179 S.E. 167 (1935). However, neither case holds that a partnership relationship in Georgia creates an express or technical trust. In fact, the case law in Georgia is quite clear that partners do not act in the fiduciary capacity referred to in the bankruptcy law. In the case of *Hill v. Sheibley,* 68 Ga. 556 (1882), the Supreme Court of Georgia found that a debt created by the misapplication of funds by a partner was not a fiduciary debt within the exception of the 33rd section of the Bankrupt Act of 1867. Recognizing that the authority in the federal and state courts was to limit the meaning of fiduciary debts excepted from discharge, the Court stated:

> It is in effect a case where one man entrusted to another money for a joint or partnership speculation in real estate … and the debt sued on is owing for that money. To extend the principle to this case would be to extend it to every case of partnership where one put in money and the other skill and labor, and indeed to every case of partnership where one

partner got hold of the contribution of the other, and misapplied it.

*Hill v. Sheibley,* 68 Ga. 556, 559 (1882).

*Hill v. Sheibley* has been followed and referred to as a "leading case in a court of high authority". *Gee v. Gee,* 84 Minn. 384, 87 N.W. 1116 (1901). The Georgia Court of Appeals followed *Hill v. Sheibley,* in *Stephens v. Milikin,* 35 Ga.App. 287, 133 S.E. 67 (1926), holding that:

> "Exception 4 of § 17(a) of the bankruptcy act, providing that a discharge shall not release the bankrupt from debts which were created by his defalcation while acting in a fiduciary capacity, does not apply to those trusts which are merely implied by law from the contract. Where partnership assets have been sold by one of the partners and the proceeds of the sale have been received by him for the partnership, he does not hold the money as a fiduciary of the other partner or partners within the meaning of the above-mentioned provision of the bankruptcy act." (citations omitted)

*Id.* at 287, 133 S.E. 67.

Finally, plaintiffs rely on *Arnett v. Weiner (In re Weiner),* 95 B.R. 204 (Bankr. D.Kan.1989), where the court held that there were additional facts that evidenced the existence of an express or technical trust, notwithstanding the general rule that partners do not act in a fiduciary capacity within the meaning of § 523(a)(4). When the debtor in *Weiner* set up the partnership, he held himself out to the other partners as both a licensed attorney and a certified public accountant. He was also the sole managing partner, and the court found that the relationship was characterized by all the typical attributes of a technical trust. Here, plaintiffs have not presented any additional facts that evidence the existence of a technical trust. The business organization in the case at bar was a typical limited partnership. To hold that debtor here is a fiduciary would in essence result in a holding that all general partners are fiduciaries within the meaning of § 523(a)(4). Such an expansion of the definition of "fiduciary" is unwarrant-

ed and inconsistent with the established body of law on this subject.

In accordance with the above reasoning, plaintiffs' motion for summary judgment is DENIED; defendant's motion for summary judgment is DENIED with respect to plaintiff Leizear's claim under § 523(a)(6) in the amount of $8,000.00; and defendant's motion for summary judgment with respect to all other claims is GRANTED.

IT IS SO ORDERED.