Roy M. HUFFINGTON et al., Petitioners,

v.

Haden J. UPCHURCH, Respondent.

No. B–5342.

Supreme Court of Texas.

Jan. 21, 1976.

Rehearing Denied Feb. 18, 1976.

Andrews, Kurth, Campbell & Jones, Alfred H. Ebert, Jr., V. Camp Cuthrell, III and Edith H. Jones, Baker & Botts, Frank

G. Harmon, Richard B. Miller and Richard A. Brooks, Houston, for petitioners.

Fred Parks, Houston, Sloan B. Blair, Howard G. Barker, Cantey, Hanger, Gooch, Cravens & Munn, Fort Worth, for respondent.

POPE, Justice.

Haden J. Upchurch sued Roy Huffington, Inc. and Roy Huffington individually to impress a constructive trust upon the legal and beneficial interests in a partnership opportunity which Upchurch claimed was misappropriated for defendants' exclusive benefit. Haden Upchurch, Roy Huffington, R. E. Warren, and Paul Scott were partners in an oil and gas investment firm. On the basis of the jury's answers to special issues and the evidence, the trial court rendered judgment impressing a trust in favor of Upchurch to the extent of 14.285% of the beneficial interest created or retained by defendants in a joint venture agreement for an Indonesian oil and gas venture. The court of civil appeals affirmed the judgment but modified it so that Upchurch's recovery was raised from 14.285% to 20%. The basis for the additional recovery was that Warren and Scott had, as a matter of law, abandoned their interests in the Indonesian venture and that Upchurch was also entitled to a pro rata share of their abandoned interests. A full statement of the facts is contained in the opinion of the court of civil appeals. 523 S.W.2d 44. We reverse that part of the judgment of the court of civil appeals which awarded Upchurch a part of the partnership interest of Warren and Scott, but we affirm the judgment of the court of civil appeals and that of the trial court which allowed Upchurch his own partnership interest in the Indonesian venture.

### The Partnership Agreement

Roy Huffington was the sole owner of Huffington, Inc., a diversified corporation with interests in oil and gas, real estate and shrimping. Huffington, Inc. engaged in the oil and gas business by locating oil and gas projects and then financing investments in them with funds obtained from outside individual investors. If the venture was successful, Huffington, Inc. would pay the outside investor a large percentage of the profits and keep a small reversionary interest for itself. In 1963, Huffington, Inc. employed Haden Upchurch as a landman, R. E. Warren as chief geologist and Paul Scott as production engineer. Although Huffington was a trained geologist, he had also demonstrated considerable talent for finding the outside investors who were necessary to finance costly oil and gas ventures. Upchurch, Warren and Scott were all paid $1,500 per month, and as an additional incentive, they were given a percentage of certain interests retained by Huffington, Inc. in the oil and gas ventures.

In 1965 the Fifth Circuit decided the case of *United States v. Frazell*, 335 F.2d 487 (5th Cir. 1964), *cert. denied*, 380 U.S. 961, 85 S.Ct. 1104, 14 L.Ed.2d 152 (1965), in which the court indicated that the full value of a reversionary interest received by an employee as compensation could be taxed in the year the interest vested. Huffington claims that the only reason a partnership was formed was to shelter Upchurch, Warren and Scott from the extra tax liability which the *Frazell* case threatened to impose. Upchurch disputes this contention and claims that the tax consequences only played a part in their decision to form the partnership. Whatever the motives may have been, the fact is that the partnership of Huffington Associates was formed in January, 1966, consisting of Huffington, Upchurch, Warren and Scott, and their rights and duties were controlled by the partnership agreement. Huffington, Inc. remained as an independent business entity. Upchurch, Warren and Scott continued to do the same jobs at the same salaries, and they received the same percentages of any reversionary interest as they had as employees of Huffington, Inc. Huffington was designated as the managing partner.

The purpose of the partnership was explicitly stated in the partnership contract:

> The purposes of the partnership shall be to acquire, own, develop and operate oil, gas and mineral leases, mineral interests and royalty interests, properties and prospects and to produce therefrom and treat, transport and market oil or gas, or both of them, or production derived therefrom.

Apparently the parties realized that there were some areas of business which Huffington would want to pursue independently of the partnership. Thus the agreement provided that the partners were "free to conduct, in their individual capacities, or in association with others, *any other business transaction not directly related to the business of acquiring mineral leases and other mineral or royalty interests* and the exploration for and production of oil, gas and other minerals." (Emphasis added.) The full text of the partnership agreement is set out in an appendix to the opinion of the court of civil appeals.

### The Indonesian Venture

In early 1968, and while the partnership agreement was operative, Huffington learned that Virginia International Company (VICO) had contacts with the Indonesian government concerning oil and gas matters. VICO's Vice President arranged several meetings in Indonesia for Huffington. During the time of these negotiations, Upchurch asked Huffington "would we be in the Indonesian deal" and at that time, Huffington replied, "Yes." Upchurch offered to pay his share of the costs which up to that time only amounted to travel expenses. On August 8, 1968, a deal was made with the Indonesian government, and through a series of complicated business transactions Huffington eventually acquired for Huffington, Inc. a ten percent working interest and a one percent overriding royalty interest in a highly profitable Indonesian oil and gas project. At this point Huffington refused to recognize Up-

church's right to participate and Upchurch filed suit. Neither Warren nor Scott are parties to this suit.

### The Partnership's Ability to Finance the Indonesian Venture

It is undisputed that the Indonesian venture fell within the nature of the partnership business as defined by the written contract. However, it was defendants' contention that Upchurch failed to plead and prove the partnership's financial capability to take advantage of this particular venture.

In *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 571 (Tex.1963), the principal officers of International Bankers Life sold some of their personal shares of stock in competition with a stock offered by Bankers Life. The defendants in that case claimed that "there must be findings that plaintiff could or would have sold its new issue stock to purchasers of the stock of the defendants." We rejected that notion and held "the burden is upon the defendants to establish the fairness of the personal sales transaction to the corporation, and that plaintiff does not have the burden of establishing that the corporation could or would have sold its stock had the defendants not engaged in their competitive sales activities. The latter is no more than evidentiary upon the question of fairness, and upon the question of exemplary damages." See also *Perlman v. Feldmann*, 219 F.2d 173 (2d Cir. 1955); *Irving Trust Co. v. Deutsch*, 73 F.2d 121 (2d Cir. 1934); Comment, *The Corporate Opportunity Doctrine*, 18 Sw.L.J. 96 (1964). Although the *Holloway* case dealt with the fiduciary duties of corporate officers and directors, the above quoted principle of law is equally applicable to partnerships.

The defendants urge that Upchurch only made $1,500 per month and that Huffington Associates lacked the resources to finance this multimillion Indonesian project. This really misses the point. One of the talents which Roy Huffington was obligat-

ed to contribute to the partnership was his proven ability to find outside investors for the oil and gas ventures. Whether the venture was undertaken in the name of Roy Huffington, Inc. or the partnership, it was necessary to find outside investors who would finance the project. While it is true that Huffington, Inc. obligated itself to put several million dollars into this venture over a period of years, Huffington, Inc. only advanced $50,000 "front money" to seal the bargain. Most of the other funds were secured from outside investors by selling off part of the valuable acquired interest.

█ The partnership contract obligated Roy Huffington to "give his attendance to, and to the utmost of his skill and power shall exert himself for, the joint interest, benefit and advantage of said partnership business." In a case of this kind, where the partner who has misappropriated a particular opportunity is also the partner who is primarily responsible for finding financial backing, the burden of proving financial incapability should be on him so as to encourage the exertion of his best efforts. Judge Swan spoke of this aspect of the financial capability defense in *Irving Trust Co. v. Deutsch*, 73 F.2d 121 (2d Cir. 1934):

> If directors are permitted to justify their conduct on such a theory, there will be a temptation to refrain from exerting their strongest efforts on behalf of the corporation since, if it does not meet the obligations, an opportunity of profit will be open to them personally. Cf. *Trice v. Comstock*, 121 F. 620, 623, 61 L.R.A. 176 (C.C.A. 8). Indeed, in the present suit it is at least open to question whether a stronger effort might not have been made on the part of the management to procure for Acoustic the necessary funds or credit.

█ As managing partner of Huffington Associates, Roy Huffington owed to his copartners one of the highest fiduciary duties recognized in the law. In *Smith v. Bolin*, 153 Tex. 486, 271 S.W.2d 93, 96 (1954), this court quoted at length from Justice Cardo-

zo's opinion in *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545 (1928) concerning the fiduciary duties of managing partners.

As managing partner of their partnership enterprise, respondent owed his partners even a greater duty of loyalty than is normally required. In the *Meinhard v. Salmon* case, supra, the court said: "Salmon had put himself in a position in which thought of self was to be renounced, however hard the abnegation. He was much more than a coadventurer. He was a managing coadventurer. * * For him and for those like him the rule of undivided loyalty is relentless and supreme". *MacDonald v. Follett*, 142 Tex. 616, 180 S.W.2d 334.

### Abandonment by Warren and Scott

Upchurch claimed in his pleadings that he was also entitled to a pro rata share of Warren and Scott's partnership interest in the Indonesian venture. The basis for his claim was that those partners had abandoned their rights to the venture, and that their abandoned rights should belong equally to the two remaining partners. The evidence of abandonment consists of letters signed by Warren and Scott, on November 11, 1968, which purported to list all the partnership assets and opportunities in which they had a right to participate. The Indonesian venture was not among the listed projects. The court of civil appeals with little discussion sustained Upchurch's crosspoint and modified the judgment so as to give Upchurch a pro rata share of Warren and Scott's interest.

█ The action of the court of civil appeals amounted to a holding that as a matter of law Warren and Scott had abandoned any interest in the Indonesian project. One who relies upon abandonment has the burden of establishing it. *Gulf Insurance Co. v. Ball*, 324 S.W.2d 605 (Tex. Civ.App.1959, writ ref'd n. r. e.); *Evans v. Evans*, 50 S.W.2d 842 (Tex.Civ.App.1932, writ ref'd). In order to establish abandon-

ment, there must be proof of an intent to relinquish a known right. *Dallas County v. Miller*, 140 Tex. 242, 166 S.W.2d 922 (1943); *Shosid v. Hughes Tool Co.*, 258 S.W.2d 945 (Tex.Civ.App.1953, writ ref'd n. r. e.); *Evans v. Evans, supra.*

■ The letters do not establish, as a matter of law, the absence of any partnership interest by Warren and Scott in the Indonesian venture. The letters recognized that the partnership was not yet terminated and that it would continue for several more months. The letters are also subject to the meaning that Warren and Scott did not know that they held rights in that venture, and they are also consistent with the idea that Huffington may have acquired their rights.

■ While the court of civil appeals incorrectly concluded that Upchurch, as a matter of law, held a proportionate part of the abandoned Warren and Scott interests; the trial court also erred in its conclusion that Upchurch, as a matter of law, held no part of those interests. There was an issue of fact which should have been resolved by the jury. Upchurch requested, and the trial court refused, two special issues which inquired whether Scott and Warren relinquished the rights that each may have had in the Indonesian contract. In our opinion, Upchurch was entitled to a submission of the abandonment issues.

■ An additional problem confronted the trial court. Neither Warren nor Scott were joined as parties to this lawsuit. The defendants did not seek to abate the action for that reason nor did they complain of the non-joinder. Warren and Scott were not indispensable parties, *Cooper v. Texas Gulf Industries, Inc.*, 513 S.W.2d 200 (Tex.1974), but that does not mean that the trial court was required to proceed to judgment which adjudicated their rights in their absence. Rule 39 accords discretion to the trial court in determining whether to proceed to trial in the absence of parties, and to consider "the extent to which, by protective provisions in the judgment, by the shaping of

relief, or other measures, the prejudice can be lessened or avoided." The trial court did more than that; it wholly rejected Upchurch's claim to the Warren and Scott interest. In our opinion, Upchurch is entitled to a trial of the fact issue whether Warren and Scott abandoned a known right or otherwise divested themselves of any right they may have had in the Indonesian venture.

Rules 503, 434 and 320 were changed, effective January 1, 1976, to permit partial remands and partial retrials in limited kinds of cases, *i. e.*, when an "error affects a part only of the matter in controversy and that such part is clearly separable without unfairness to the parties." It is our opinion that the cause of action between Upchurch as plaintiff and Huffington individually and Huffington, Inc., as defendant, has been correctly tried and need not be tried again. On the other hand the issues which concern the rights, if any, which belonged to Warren and Scott have not been properly tried. As to that action, we order a severance and a partial remand.

We affirm that part of the judgment of the court of civil appeals which awarded Upchurch a judgment against Huffington and Huffington, Inc. for 14.285 percent of the interest created by the joint venture agreement standing in the name of Roy M. Huffington, Inc. We reverse that part of the judgment of the court of civil appeals which awarded Upchurch a proportional share of the interests of Warren and Scott, and as to that part of the judgment, we order a severance of the cause and a remand to the trial court.

Costs are adjudged against the respondents.