UNITED STATES COURT OF APPEALS
for the Fifth Circuit

_____

NO.  91-1059
_____

IN THE MATTER OF:  ARCHIE BENNETT, JR.,

Debtor,

LSP INVESTMENT PARTNERSHIP, A TEXAS PARTNERSHIP,
CHARLES SAPP, HOWARD BOYD, R. BRUCE LaBOON, THOMAS REIDY,
H. MICHAEL TYSON, JOHN C. NABORS, GEORGE CARAMEROS,
WILLIS WITT, WALTER P. ZIVLEY, CROSHAW INVESTMENT
PARTNERSHIP (BY ITS AGENT, FRED E. CROSHAW), W. ROBERT BROWN,
OBIE & CO., (BY ITS AGENT, FRANK A. LIDDELL, JR.), CARL GALLOWAY,
DON C. QUAST, and JOE E. McLEMORE,

Appellants,

VERSUS

ARCHIE BENNETT, JR.,

Appellee.

_____
Appeal from the United States District Court
for the Northern District of Texas
_____
April 19, 1993


ON PETITION FOR REHEARING
(Opinion September 2, 5th Cir., 1992 _____F2d_____.)

Before POLITZ, Chief Judge and HIGGINBOTHAM, Circuit Judges, and
PRADO[1], District Judge.

PRADO, District Judge:

On the petition for rehearing filed by LSP Investment

Partnership, we hereby withdraw our prior opinion, published as LSP

_____

[1] District Judge of the Western District of Texas, sitting by
designation.

1

Inv. Partnership v. Bennett (Matter of Bennett), 970 F.2d 138 (5th Cir. 1992), and substitute the following opinion in its place.

This appeal arises out of an adversary proceeding in a bankruptcy case[2], in which the bankruptcy court entered an order granting a discharge to the Appellee, Archie Bennett, Jr., over the objection of the Appellants that certain of Mr. Bennett's debts were not dischargeable. In support of their argument, the Appellants rely solely on 11 U.S.C. § 523(a)(4), which provides that debts resulting from a defalcation by the debtor while acting in a fiduciary capacity are not dischargeable in bankruptcy. This Court must decide whether Bennett, as the managing partner of the managing partner of the limited partnership, owed a sufficient fiduciary duty to the limited partners to satisfy the strict requirements of 11 U.S.C. § 523(a)(4). This is a case of first impression in this Circuit.

### Standard of Review

Although this case has already been reviewed on appeal by the district court, this Court reviews the bankruptcy court's findings as if this were an appeal from a trial in the district court. Killebrew v. Brewer, 888 F.2d 1516, 1519 (5th Cir. 1989). Thus, the bankruptcy court's findings of fact are reviewed under the clearly erroneous standard, and its conclusions of law are reviewed de novo. Id.

---

[2]The underlying bankruptcy proceeding, filed on November 23, 1988, by Archie Bennett, Jr., bears Case No. 388-37142 RCM-7. The adversary proceeding is No. 389-3110.

<u>Background</u>

1. <u>Bankruptcy Court's Findings of Fact</u>.

The facts in this case are essentially undisputed.[3] In approximately March of 1980, Bennett and the Appellants formed a Texas limited partnership known as Mariner/Greenspoint, Ltd. ("MG"). The Appellants in this case are and were at all relevant times, limited partners of MG. The sole general partner of MG was another limited partnership, known as Mariner Interest No. 20, Ltd. ("No. 20"). The sole general partner of No. 20 was the Appellee, Archie Bennett, Jr.

Under the terms of the MG partnership agreement, the general partner, No. 20, was charged with management of the partnership and had full, exclusive and complete authority and discretion to manage, control and make all decisions affecting the purposes of the partnership and to take any action required to effectuate the purpose of the partnership. Bennett, as the sole general partner of No. 20, was the only individual with the power or authority to direct the affairs of No. 20 and MG, and was prohibited by the MG partnership agreement from voluntarily withdrawing as the general partner of No. 20.

The purpose of the MG partnership was to construct and operate

_____

[3]The Appellee expressly states that he relies on the bankruptcy court's findings of fact. Appellee's Brief, p. 3. With one partial exception, the Appellants agree that the bankruptcy court's findings of fact are correct. Appellants' Brief, p. 7. The exception, discussed below, is the Appellants' argument that the bankruptcy court erred in failing to find that the $1 million distribution by M/G to Bennett was a defalcation under 11 U.S.C. § 523(a)(4). <u>Id</u>. This is a mixed question of law and fact.

3

a Marriott hotel near the Greenspoint Mall in Houston, Texas. The partnership obtained $22 million, in capital contributions and loans, to cover the cost of constructing the hotel. The MG partnership agreement required the general partner to contribute cash, as necessary, for the costs of constructing, equipping and furnishing the hotel, to the extent such costs exceeded the $22 million previously raised. As an incentive, the agreement also provided that the general partner was eligible to receive a cash distribution of up to $4 million if the project was completed for less than the projected $22 million. However, prior to taking any distribution for savings in the construction of the hotel, the general partner was required both to construct the hotel and to provide all equipment necessary so that it could operate as a "first-class hotel".

At some point early on in the business venture, Bennett retained a corporation, known as Mariner Corporation, to perform his duties as the general partner of No. 20 and, in turn, its duties as general partner of MG. Mariner Corporation was 100% owned by Bennett. The officers and employees of Mariner Corporation acted on Bennett's behalf in performing their duties and were aware that, if the project was completed under budget, the savings would be paid directly to Bennett.

Mariner Corporation obtained bids for the construction of the hotel from a number of general contractors. All of the bids initially submitted were at least $1 million over the budgeted amount of $22 million. After these bids were received, Mariner

4

Corporation entered into negotiations with one of the contractors, Eaves Construction. Subsequently, Eaves dropped its bid price by $1 million and was awarded the contract. Eaves was not able to obtain a bond on the project, however, due to its lack of financial strength and lack of a sufficient track record on large projects. Bennett told Eaves that it could have the job without a bond, if it reduced its general contractor's fee by one-half. Eaves agreed and reduced its fee by an additional $250,000.

The hotel was completed on time, and opened in January of 1981. At that time Bennett made a $1 million distribution to himself, for completing the project for less than the budgeted $22 million.

Subsequently, several problems with the hotel came to light. First, in approximately April of 1981, mildew began to occur in the guest rooms of the hotel. This mildew was evidently caused by a "negative pressure" problem, which in turn was caused by the design of the heating, ventilation, and air conditioning (HVAC) system in the hotel.[4] As a result of the mildew problem, virtually all of the guest rooms in the hotel had to be revinyled and resheetrocked twice, during 1981 and 1982.[5]

---

[4]"Negative pressure" in a building occurs when more air is exhausted from the building than is made up with conditioned air. The result is that warm, humid air will be drawn into the building to equalize the pressure.

[5]The record indicates that, prior to completion of the hotel, in November of 1980, Bennett was made aware that another Marriott hotel, the Brookhollow Marriott, which had substantially the same HVAC system design as the Greenspoint Marriott, had begun to experience similar mildew problems.

The bankruptcy court found that the mildew problem at the hotel was a continuous construction problem that the general partner had an obligation to fix and pay for under the terms of the MG partnership agreement. The court found that the first round of repairs was performed at the expense of the general contractor. The second round, however, was charged, by the general partner, to the partnership earnings. The limited partners' share of this cost was $72,000.

The bankruptcy court also reviewed numerous equipment leases that were entered into by the general partner for the purpose of providing various types of equipment to the hotel. The court found that, under the partnership agreement, the general partner had an obligation to equip and furnish the hotel with the $22 million budgeted amount. The court found, with respect to some but not all of these leases, that the general partner had charged them to the partnership, instead of paying for them out of the construction budget. The court also found that Bennett had failed to properly disclose these leases to the limited partners, or to obtain their approval for them. The court determined that the amount wrongfully charged to the limited partners for these equipment leases was $832,204.40.

2. Bankruptcy Court's Conclusions of Law.

The bankruptcy court concluded that the misapplication of partnership funds to pay for the mildew repairs and the equipment leases described above were the result of defalcations by the general partner of MG in the total amount of $904,204.40. The

6

court also found that No. 20, as the sole general partner of MG, was a fiduciary to the limited partners of MG, for purposes of section 523(a)(4).  The bankruptcy court noted that while Texas courts have not extended the partnership relationship generally to encompass the type of fiduciary duty envisioned by section 523(a)(4), an exception exists for the managing partner of a partnership, who owes to his co-partners, "one of the highest fiduciary duties recognized in law."  (Citing Huffington v. Upchurch, 532 S.W.2d 576 (Tex. 1976); Crenshaw v. Swenson, 611 S.W.2d 886 (Tex.Civ.App.--Austin 1980, writ ref'd n.r.e.)).

The bankruptcy court also found, however, that Bennett, as the general partner of the general partner, did not owe a fiduciary duty to the limited partners of MG.  The bankruptcy court stated:

> No. 20 was the fiduciary of MG and only it had an express, technical, preexisting trust relationship with MG, even though Bennett was the managing partner of No. 20.

The bankruptcy court found that Bennett's individual liability to the limited partners of MG came into effect only by reason of the breach by No. 20, and pursuant to the Uniform Partnership Act (UPA) which provides, "[a]ll partners are liable jointly and severally for all debts, and obligations of the partnership . . . ." Tex.Rev.Civ.Stat.Ann. art. 6132b, § 15 (Vernon 1979).  The court reasoned that while the UPA made Bennett liable for No. 20's partnership "obligations", it did not create a fiduciary relationship between Bennett and the limited partners of MG. Accordingly, the bankruptcy court granted a discharge to Bennett of all debts, including those which it found to have resulted from

7

defalcations by No. 20, while acting in a fiduciary capacity.

3. <u>District Court's Order</u>.

The district court, in a brief opinion, affirmed the order of the bankruptcy court granting a discharge to Bennett, but for a different reason. The district court stated:

> Though Bennett was the managing partner of the limited partnership, and Texas courts have imposed a higher degree of fiduciary duty on managing partners, they have done so in the context of constructive, rather than technical, trusts. (Citing <u>Huffington v. Upchurch</u>, 532 S.W.2d 576 (Tex. 1976); <u>Crenshaw v. Swenson</u>, 611 S.W.2d 886 (Tex.Civ.App.--Austin 1980, writ ref'd n.r.e.)).

Thus, the district court concluded that the high level of fiduciary duty imposed on managing partners of a partnership under Texas law, only arose in the context of a constructive trust and, since constructive trusts are insufficient as a matter of law to meet the express trust requirements of section 523(a)(4), the district court affirmed the order of the bankruptcy court granting a discharge to Bennett.

Analysis

1. <u>Fiduciary Duty Under Section 523(a)(4)</u>

The Bankruptcy Code provides in pertinent part as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> (4) for fraud or defalcation while acting in a fiduciary capacity . . . .

11 U.S.C. § 523(a)(4).

The first issue that we address is whether the scope of the fiduciary duty owed by the managing general partner of a limited partnership to the limited partners is sufficient to meet the

8

narrow requirements of section 523(a)(4). Next, we must decide if such a duty also applies to the managing partner of the managing partner.

A number of courts have addressed the issue of whether a partner generally owes the type of fiduciary duty contemplated by section 523(a)(4) to his co-partners. The courts are split on this issue with approximately half finding that such a fiduciary duty is owed,[6] and the other half finding that it is not.[7]

---

[6]See, e.g., Lewis v. Short (In re Short), 818 F.2d 693, 695-96 (9th Cir.1987) (Washington law); Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir.1986) (California law); Longo v. McLaren (In re McLaren), 136 B.R. 705, 714 (Bankr. N.D. Ohio 1992); Gravel v. Chris J. Roy, A Law Corp. (In re Chris J. Roy), 130 B.R. 214 (Bankr. W.D.La. 1991); Beebe v. Schwenn (In re Schwenn), 126 B.R. 351 (D. Colo. 1991); Getaz v. Stewart (In re Stewart), 123 B.R. 817 (Bankr.W.D.Tenn. 1991); Brown v. McKay (In re McKay), 110 B.R. 764 (Bankr.W.D.Pa. 1990); Susi v. Mailath (In re Mailath), 108 B.R. 290, 293-94 (Bankr. N.D.Okla. 1989); In re Guy, 101 B.R. 961, 986-91 (Bankr. N.D.Ind.1988) In re Cramer, 93 B.R. 764, 767-68 (M.D. Fla.1988) Lee v. Crosswhite (In re Crosswhite), 91 B.R. 156 (Bankr.M.D.Fla. 1988); Stone v. Stone (In re Stone), 90 B.R. 71, 79-80 (Bankr. S.D.N.Y.), aff'd, 94 B.R. 298, 302-03 (S.D.N.Y.1988), aff'd, 880 F.2d 1318 (2nd Cir. 1989); In re Dino, 82 B.R. 184, 186 (Bankr. D.R.I.1988); In re Owens, 54 B.R. 162, 164-65 (Bankr. D.S.C.1984); In re Kraus, 37 B.R. 126, 129 (Bankr.E.D.Mich.1984). See also In re Weiner, 95 B.R. 204, 206-07 (Bankr.D. Kansas 1989) (although no fiduciary relationship between partners generally, the sole managing partner had responsibilities commonly associated with trustee and was therefore a fiduciary under section 523(a)(4)); In re Hurbace, 61 B.R. 563, 565-66 (Bankr.W.D.Tex.1986) (holding that there was insufficient fiduciary relationship between equal co-partners to meet requirements of section 523(a)(4), but indicating, in dicta, that managing partner's fiduciary duties probably sufficient).

[7]Rolley v. Spector (In re Spector), 133 B.R. 733 (Bankr. E.D.Penn 1991); Blashke v. Standard (In re Standard), 123 B.R. 444 (Bankr.N.D.Ga. 1991); Sulphur Partnership v. Piscioneri (In re Piscioneri), 108 B.R. 595 (Bankr.N.D.Ohio 1989); Stahl v. Lang (In re Lang), 108 B.R. 586 (Bankr.N.D.Ohio 1989); Coleman v. Choisnard (In re Choisnard), 98 B.R. 37 (Bankr.N.D.Okl. 1989); Medved v. Novak, (In re Novak), 97 B.R. 47 (Bankr. D.Kan. 1987); In re Lewis, 94 B.R. 406, 410 (Bankr. E.D.Va. 1988); In re Stone, 91

9

The seminal case in this Circuit interpreting the discharge provision at issue is Angelle v. Reed (In re Angelle), 610 F.2d 1335 (5th Cir. 1980).[8] In Angelle we reviewed a line of Supreme Court cases discussing and interpreting similar discharge provisions contained in prior versions of the bankruptcy laws. We held that the concept of fiduciary under 11 U.S.C. § 523(a)(4) is narrowly defined, applying only to technical or express trusts, and not those which the law implies from the contract. Id., (quoting Chapman v. Forsyth, 2 U.S. (How.) 202, 207, 11 L.Ed. 236, 238 (1844)). In addition, the requisite trust relationship must exist prior to the act creating the debt and without reference to that act. Id., (citing Upshur v. Briscoe, 138 U.S. 365, 378, 11 S.Ct. 313, 317, 34 L.Ed. 931, 936 (1890)). In other words, the trust giving rise to the fiduciary relationship must be imposed prior to any wrongdoing. The debtor must have been a trustee before the wrong and without any reference to it. Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. 1986). Thus, a constructive trust is not

---

B.R. 589, 594 (D.Utah 1988); Dreyfoos v. Ryan (In re Ryan), 90 B.R. 554 (Bankr.S.D.Fla. 1988); In re Braudis, 86 B.R. 1001, 1004 (Bankr.W.D.Mo.1988); In re Clemens, 83 B.R. 945, 951 (Bankr.N.D. Ohio 1988); In re Napoli, 82 B.R. 378, 382-83 (Bankr.E.D.Pa.1988); In re Elliott, 66 B.R. 466, 467 (Bankr.S.D.Fla.1986); In re Holman, 42 B.R. 848, 850-51 (Bankr.E.D.Mo.1984).

[8]In the Angelle case we construed section 17a(4) of the former Bankruptcy Act, 11 U.S.C. § 35(a)(4). We have previously noted that while the language of section 523(a)(4) does not precisely parallel that of the predecessor statute, 11 U.S.C. § 35(a)(4), the two statues are similar enough that decisions construing the prior statute are applicable to section 523(a)(4). Boyle v. Abilene Lumber, Inc., 819 F.2d 583, 587 (5th Cir. 1987).

sufficient to create a fiduciary relationship for purposes of the discharge provisions of the Bankruptcy Act.  Angelle, 610 F.2d at 1339; Ragsdale, 780 F.2d at 796.

In determining whether a particular debtor was acting in a fiduciary capacity for purposes of section 523(a)(4), the Court must look to both state and federal law.  The scope of the concept of fiduciary under 11 U.S.C. § 523(a)(4) is a question of federal law; however, state law is important in determining whether or not a trust obligation exists.  Angelle, 610 F.2d at 1339.

There has been some disagreement among the courts as to what exactly is meant by the requirement that there be a "technical trust" to satisfy section 523(a)(4).  Most courts today, however, recognize that the "technical" or "express" trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law.  See e.g. Moreno v. Ashworth, 892 F.2d 417, 421 (5th Cir. 1990) (officer of a corporation owed common law fiduciary duty to corporation and stockholders sufficient to satisfy requirements of section 523(a)(4)); Lewis v. Short (In re Short), 818 F.2d 693, 695-96 (9th Cir.1987) (Washington common law imposed trustee-like duties on partners of partnership); Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir.1986) (California common law imposed trustee-like duties on all partners of a partnership); Carey Lumber Company v. Bell, 615 F.2d 370, 374 (5th Cir. 1980) (Oklahoma Lien Trust statutes created an express trust).  Thus, the trust obligations necessary

11

under section 523(a)(4) can arise pursuant to a statute, common law or a formal trust agreement.

2. <u>Fiduciary Duties of Managing Partners Under Texas Law</u>.

The controlling law in this case is Texas law. Therefore, this Court must look to Texas law in order to determine what obligations are imposed on the managing general partner of a limited partnership with respect to the limited partners. The Court must then decide whether the obligations imposed under state law are sufficient to meet the federal law requirements of "fiduciary capacity" under section 523(a)(4).

In addressing this issue, both the bankruptcy court and the district court below referred to and relied on the case of <u>In re Hurbace</u>, 61 B.R. 563 (Bankr. W.D.Tex. 1986). In that case, involving a general partnership, the court addressed the issue of whether the debtor should be denied a discharge under section 523(a)(4) for a judgment entered against him in state court for his failure to account to one of his former partners for certain partnership funds. <u>Id</u>. at 564-65. The <u>Hurbace</u> court looked to the Texas version of the Uniform Partnership Act (UPA), in order to determine whether the requisite trust relationship existed for purposes of section 523(a)(4). The court focused on the following language:

> Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

Tex.Rev.Civ.Stat.Ann. art. 6132b, § 21 (Vernon 1979). The court

12

stated that the phrase "hold as trustee" did not establish a technical or express trust for purposes of section 523(a)(4). More to the point, the court found that, "[u]nder the Texas statute, the trust arises only when the partner derives profits without the consent of the other partners. Therefore, the statute would fall within the ambit of a trust ex maleficio specifically excluded from the purview of nondischargeable debts under § 523(a)(4)." In re Hurbace, 61 B.R. at 566. The Hurbace court's interpretation of the UPA is in accord with those decisions cited above in which this UPA provision has been held not to satisfy the requirements of section 523(a)(4). See e.g., Medved v. Novak, (In re Novak), 97 B.R. 47 (Bankr. D.Kan. 1987).

Only one circuit court has addressed the issue of the fiduciary obligations of a partner in the context of a section 523(a)(4) claim. In the case of Ragsdale v. Haller, 780 F.2d 794 (9th Cir. 1986), the Ninth Circuit held that, under California law, the partners in a partnership did owe one another the type of fiduciary duty contemplated by section 523(a)(4). Id., at 796-97. The court found that, while the California partnership statute only created a trust ex maleficio, the California state courts had imposed additional duties on the partners in a partnership:

> In California, partners are trustees for each other and in all proceedings connected with the conduct of the partnership every partner is bound to act in the highest good faith to his co-partner and may not obtain any advantage over him in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind.

Id. at 796. (Quoting Leff v. Gunter, 33 Cal.3d 508, 514, 658 P.2d 740, 744, 189 Cal.Rptr. 377, 381 (1983)). The court concluded that

13

the obligations imposed by the California courts were "more than just a fiduciary relationship created in response to some wrongdoing; California has made all partners trustees over the assets of the partnership." Id. As a result, the court held that the debtor's debt to his partner was not dischargeable.[9] Id.

The Hurbace court declined to follow the Ragsdale decision, finding that the Texas courts had not imposed the same type of fiduciary duties on partners as the California courts. In re Hurbace, 61 B.R. at 566. The court observed that:

> It is only when viewing the position of managing partners do Texas courts venture to impose the type of fiduciary duty described in Ragsdale. (Citations omitted).

Id. The court concluded:

> . . . in the present case dealing not with a managing partner vis-a-vis general partners but with equal co-partners, the scope of fiduciary duty described in Ragsdale is not applicable . . . [and] . . . § 523(a)(4) insofar as it relates to a debtor acting in a fiduciary capacity does not apply to the failure of partners to account.

Id. Therefore, the court in Hurbace held that under Texas law, there was not a sufficient fiduciary duty between equal co-partners of a general partnership to satisfy the requirements of section 523(a)(4).

However, the case at bar does not involve equal co-partners, as the Hurbace case did. In this case the Court must decide first whether, under Texas law, the scope of fiduciary duty owed by a general partner to limited partners meets the express trust

---

[9]Subsequently, the Ninth Circuit held that, under Washington law, partners were also fiduciaries for purposes of section 523(a)(4). Lewis v. Short (In re Short), 818 F.2d 693, 695-96 (9th Cir.1987).

14

requirements of section 523(a)(4), and second, whether such a duty exists for or can be imputed to the managing partner of the managing partner.

The Appellants argue that the Texas courts have long held that a partner in complete control of a partnership, whether the general partner of a limited partnership or the managing partner of a general partnership, owes one of the highest fiduciary duties known at law to his partners.  The Appellee, on the other hand, relying on the opinion of the district court, argues that, while the Texas courts have imposed a very high level of fiduciary duty on managing partners, they have done so only in the context of constructive trusts and, therefore, by definition these obligations are insufficient to meet the express trust requirements of the bankruptcy discharge provisions.[10]

The Texas Supreme Court case of Huffington v. Upchurch, 532 S.W.2d 576 (Tex. 1976), is generally cited as the primary authority for the imposition of trustee-like duties on the managing partner of a partnership.  The Huffington case did involve the imposition of a constructive trust.  Id. at 577.  Likewise, the two cases

---

[10]In support of its holding, the district court relied in part on the case of CRL of Maryland, Inc. v. Holmes, 117 B.R. 848 (Bankr.D. Md. 1990).  The court in Holmes held that a statutory trust cannot be a technical trust for purposes of section 523(a)(4) in the absence of the execution of a formal trust agreement between the parties because the creation of an express trust depends upon the intention of the parties and can never be created by statute alone.  CRL of Maryland, Inc. v. Holmes, 117 B.R. at 853.  This Circuit has not taken such a technical approach to the interpretation of section 523(a)(4), see e.g. Moreno v. Ashworth, 892 F.2d 417, 421 (5th Cir. 1990), and does not find that such an approach is warranted in this case.

15

cited by the court in <u>Huffington</u> in support of the proposition that managing partners owe the highest level of fiduciary obligation to their co-partners, were also constructive trust cases.  <u>See</u> <u>Smith v. Bolin</u>, 153 Tex. 486, 271 S.W.2d 93 (1954); <u>McDonald v. Follett</u>, 142 Tex. 616, 180 S.W.2d 334 (1944).

However, contrary to Bennett's contention, this principle has not been limited to cases involving constructive trusts.  In <u>Cook v. Peacock</u>, 154 S.W.2d 688 (Tex.Civ.App.--Eastland 1941, writ ref'd w.o.m.), a case involving an action for a partnership accounting, the court observed that "[t]he duty of a partner in control of . . . a business is analogous to that of a trustee." <u>Id</u>., at 691. <u>See also</u>  <u>Conrad v. Judson</u>, 465 S.W.2d 819, 828 (Tex.Civ.App.--Dallas 1971, writ ref'd n.r.e.), <u>cert</u>. <u>denied</u>, 405 U.S. 1041 (1972); <u>Johnson v. Buck</u>, 540 S.W.2d 393, 412-13 (Tex.Civ.App.--Corpus Christi 1976, writ ref'd n.r.e.);  <u>Cf</u>. <u>Johnson v. J. Hiram Moore Ltd.</u>, 763 S.W.2d 496, 499 (Tex.App.--Austin 1988, writ denied); <u>Veale v. Rose</u>, 657 S.W.2d 834, 837 (Tex.App.--Corpus Christi 1983, writ ref'd n.r.e.).

In <u>Watson v. Limited Partners of WCKT, Ltd.</u>, 570 S.W.2d 179 (Tex.Civ.App.--Austin 1978, writ ref'd n.r.e.), a case brought for breach of fiduciary duty, the court held:

> In a limited partnership the general partner, acting in complete control, stands in the same fiduciary capacity to the limited partners as a trustee stands to the beneficiaries of the trust. (Citations omitted).

<u>Id</u>., at 182.  And in the <u>Crenshaw</u> case, discussed at length below, the court stated:

> It is axiomatic that a managing partner in a general

16

> partnership owes his co-partners the highest fiduciary duty recognized in the law.

Crenshaw v. Swenson, 611 S.W.2d 886, 890 (Tex.Civ.App.--Austin 1980, writ ref'd n.r.e.).

This Court has previously observed, in deciding whether tax attributes associated with certain commercial real estate should be attributed to a corporation or a partnership, that the duty a general partner owes to limited partners is analogous to that owed by a trustee to trust beneficiaries. Moncrief v. United States, 730 F.2d 276, 285 (5th Cir. 1984) (Citing Crenshaw v. Swenson, 611 S.W.2d 886 (Tex.Civ.App.--Austin 1980, writ ref'd n.r.e.)).

Further, in Moreno v. Ashworth, 892 F.2d 417, 421 (5th Cir. 1990), we held that the debtor, who was an officer of a corporation, owed a fiduciary duty to that corporation and its stockholders. We found that because the debtor had entered into certain self-dealing transactions while an officer of the corporation, the debts arising from these transactions were not dischargeable under the provisions of 11 U.S.C. § 523(a)(4). Id. Because the role of an officer or director of a corporation with respect to the shareholders is analogous to the role of managing partner of a limited partnership with respect to the limited partners, Moreno, by analogy, supports the argument that the managing partner of a limited partnership owes a sufficient fiduciary duty to the limited partners to satisfy the requirements of section 523(a)(4).

Significantly, the specific duties imposed by the Texas courts on managing partners pursuant to this line of cases are the same as

17

those imposed on trustees. They include the duty of loyalty, Huffington, 532 S.W.2d at 579, and the duty to "deal with one another with the utmost good faith and most scrupulous honesty." Johnson, 763 S.W.2d at 499. As the court in Crenshaw stated, when a general partner is in complete control of the assets and affairs of a limited partnership:

> [His] conduct must be measured by standards exacting the utmost fidelity . . . . Not only is it [the general partner's] duty to administer the partnership affairs solely for the benefit of the partnership, he is not permitted to place himself in a position where it would be for his own benefit to violate this duty.

Crenshaw, 611 S.W.2d at 890.

We find, as the Ninth Circuit did in Ragsdale, that these obligations are more than a fiduciary relationship created in response to some wrongdoing. Texas law clearly and expressly imposes trust obligations on managing partners of limited partnerships and these obligations are sufficient to meet the narrow requirements of section 523(a)(4).

However, this is only the first step in the analysis, because it is undisputed that Bennett was not the managing partner of MG. He was instead, the managing partner of the managing partner of MG. Therefore, this Court must now address the more difficult question of whether Texas law imposes these same trust-type obligations on the managing partner in a two-tiered partnership arrangement, i.e. the managing partner of the managing partner.

In support of their argument that Bennett did owe a trustee's fiduciary obligation to the limited partners of MG, the Appellants rely on the case of Crenshaw v. Swenson, 611 S.W.2d 886

18

(Tex.Civ.App.--Austin 1980, writ ref'd n.r.e.). They argue that both the facts and the court's analysis in that case support the proposition that under Texas law a general partner of a general partner of a limited partnership owes a fiduciary duty of loyalty to the limited partners. Because Crenshaw is the only case that arguably supports the Appellants' contention it merits further discussion.

The Crenshaw case was a suit for breach of fiduciary duty, and involved a limited partnership known as Rolling Hills Majestic Homes (Group I), Ltd. This limited partnership was formed for the purpose of constructing and selling four homes in Austin, Texas. The general partner of this limited partnership was another partnership, known as Occidental Syndicated Investments (Occidental). The original partners in Occidental were Elizabeth Swenson, Robert Johnson and James Cooper. Id., at 888. Elizabeth Swenson, the defendant in the Crenshaw case, was therefore a general partner of the general partner of a limited partnership; a relationship clearly analogous to that of Archie Bennett vis-a-vis the MG limited partnership.

In Crenshaw, the limited partnership agreement provided that the limited partners would contribute capital to the partnership, a portion of which was to be used to purchase tracts of land for development. Title to these tracts was held by Swenson Corporation, a corporation wholly owned by Elizabeth Swenson and her husband, Vernor Swenson. After the lots were purchased from Swenson Corporation, the limited partnership attempted to obtain a

19

construction loan to finance the building of houses on the lots. The lender refused to make the loan to the limited partnership, but agreed to lend the money to Swenson Corporation. As a result, the lots were transferred back to the Swenson Corporation so that the property could be used as security for the construction loan. Id.

Subsequently, a variety of problems developed with respect to the construction and sale of the houses. The partnership sustained losses, and the limited partners were left empty-handed and disgruntled. The limited partners then brought suit against Elizabeth Swenson for breach of fiduciary duty. Id. at 888-889.

The Crenshaw court decided the case based on the law of trusts stating:

> It is axiomatic that a managing partner in a general partnership, owes his co-partners the highest fiduciary duty recognized in the law. In a limited partnership, the general partner acting in complete control stands in the same fiduciary capacity to the limited partners as a trustee stands to the beneficiaries of the trust. We must then, in deciding this case, do so under the laws applicable to trusts.

Crenshaw, 611 S.W.2d at 890. The court phrased the legal issue as whether "the trial court erred in failing to find that appellee, Elizabeth Swenson, breached her fiduciary duty of loyalty to the partnership and to the limited partners." Id.

The court reviewed the particular facts of the case and observed that, "a conveyance of partnership property was made and the proceeds from the sale . . . were deposited in the Swenson Corporation . . . without the knowledge or consent of [the limited partners]". Id., at 891. The court also noted that, "the Swenson Corporation was the general contractor in absolute control of the

20

partnership's destiny and . . . Elizabeth Swenson had the right to the exclusive listing when the finished product was sold . . . " Id. Taking these facts together, the court concluded that "the case takes on an aura of self-dealing which this Court is unable to condone." Id. The court then held that Ms. Swenson had breached her fiduciary duty of loyalty to the limited partners as a matter of law, and that these limited partners were entitled to equitable restitution of their investment in the limited partnership. Id.

The Appellants assert that because Elizabeth Swenson was a general partner of the general partner of the limited partnership, and because the appellate court held that she owed the limited partners the fiduciary obligations of a trustee, the case stands for the proposition that under Texas law a general partner of a general partner owes fiduciary responsibilities directly to the underlying limited partners.

Bennett disagrees with the Appellants' interpretation of Crenshaw. He argues that Crenshaw is distinguishable because,

> [W]hen all of the other general partners of Occidental Syndicated Investments resigned from the partnership, that action effected a dissolution of the separate partnership entity leaving only Swenson to act in an individual capacity as the general partner of the limited partnership.

Brief of Appellee Archie Bennett, Jr., at pp. 18-19.

While the court in Crenshaw does note that "[s]ubsequent to the execution of the partnership agreement, both Robert Johnson and James Cooper resigned as general partners," it does not indicate when this occurred. Crenshaw, 611 S.W.2d at 888. Nor does the court suggest anywhere in its opinion that this fact was relevant

21

to the conclusions it reached. In fact, in describing the critical transfer of property that forms the basis for the conclusion that Elizabeth Swenson breached her fiduciary duty to the limited partners, the court states that "the general partners transferred title to the lots back to the Swenson Corporation . . . ." Id. This indicates that, at least at the time the alleged breach occurred, Ms. Swenson was not acting individually as the general partner of the limited partnership. To the contrary, the statement that the "general partners transferred title . . ." indicates that the transfer was effected by Occidental, as the general partner of the limited partnership. Therefore, Bennett's attempt to distinguish Crenshaw is not persuasive.

What this Court finds significant is the Crenshaw court's analysis of why the managing partner of the managing partner in that case owed a fiduciary obligation to the underlying limited partners. In analyzing the duties that Ms. Swenson owed to the limited partners, the Crenshaw court focused on the nature of the business relationship as a whole, in which one person, Elizabeth Swenson, in her various roles as general partner of the general partner, owner of the corporation hired to accomplish the construction project, and the real estate broker authorized to sell the properties when completed, exercised almost total control over the project. This high level of control, over the project and the limited partners' investments, appears to have been critical in persuading the Crenshaw court that Ms. Swenson owed a fiduciary duty to the limited partners.

In reviewing the line of cases that gave rise to the rule in Texas that the managing partner of a partnership owes to his co-partners the highest fiduciary obligations known at law, it is clear that the issue of control has always been the critical fact looked to by the courts in imposing this high level of responsibility.

In <u>Huffington v. Upchurch</u>, 532 S.W.2d 576 (Tex. 1976), the case generally cited as establishing the common law rule in Texas that the managing partner of a partnership owes to his copartners one of the highest fiduciary duties recognized at law, the Texas Supreme Court cited three cases in support of its holding: <u>Smith v. Bolin</u>, 153 Tex. 486, 271 S.W.2d 93 (1954), <u>MacDonald v. Follett</u>, 142 Tex. 616, 180 S.W.2d 334 (Tex. 1944), and <u>Meinhard v. Salmon</u>, 249 N.Y. 458, 164 N.E. 545 (1928).

<u>Smith v. Bolin</u> involved a partnership in which the respondent, Bolin, was the "business manager". <u>Smith v. Bolin</u>, 271 S.W.2d at 94. Bolin, individually, had entered into renewal leases of certain oil and gas properties that had previously been leased by the partnership. He was sued by his partners for breach of fiduciary duty. The parties disagreed about whether the partnership was still in existence at the time Bolin entered into the disputed transactions, but the court, in reversing the summary judgment granted to Bolin by the trial court, quoted extensively from the opinion in <u>Meinhard v. Salmon</u>, and held that "[a]s managing partner of their partnership enterprise, respondent owed his partners even a greater duty of loyalty than is normally

23

required." Id. at 96.  The critical fact underlying this "greater duty of loyalty than is normally required," was the greater degree of control that one partner (i.e., the managing or business partner) had over the operation of the partnership and hence the investment of the other partners.

Likewise, in Meinhard v. Salmon, a case cited extensively in Texas and elsewhere for establishing the fundamental fiduciary duty rules governing managing partners, Justice Cardozo focused on the control that one "coadventurer" exercised over the business enterprise at issue:

> The very fact that Salmon was in control with exclusive powers of direction charged him the more obviously with the duty of disclosure . . .

Meinhard v. Salmon, 164 N.E. 545, 547 (N.Y. Court of Appeals 1928).

The court observed:

> [T]here may be no abuse of special opportunities growing out of a special trust as manager or agent . . . . Salmon had put himself in a position in which thought of self was to be renounced, however hard the abegnation.  He was much more than a coadventurer.  He was a managing coadventurer.  For him and for those like him the rule of undivided loyalty is relentless and supreme.  (Citations omitted).

Id. at 548.  Therefore, again in the Meinhard case the fact of control or management is vital to the court's analysis.[11]

---

[11]The Court located only one other case in which an issue similar to the one at bar was decided in a bankruptcy context.  In Park v. Moorad, 132 B.R. 58 (Bankr.Okla.1991), the debtor was the president, director and sole shareholder of a corporation, which in turn was the general partner of a limited partnership.  Id. at 60. At issue in Park was whether the debtor as an individual should be granted a discharge of debts owed by the corporation to the limited partners.  The bankruptcy court was not persuaded by the argument that only the corporation as the managing partner owed a fiduciary duty to the limited partners and denied the discharge, under section 523(a)(4), stating that the debtor would not be allowed to

24

The <u>Crenshaw</u> court, analyzing the issue in a manner consistent with the way in which Texas jurisprudence has developed in this area, concluded that Ms. Swenson, the managing partner of the managing partner of the limited partnership, owed to the limited partners the highest fiduciary duty known at law, a duty analogous to that owed by a trustee to the beneficiaries of the trust. <u>Crenshaw</u>, 611 S.W.2d at 890. Therefore, based on the holding in <u>Crenshaw</u> and the cases cited therein, we find that Bennett, as the managing partner of the managing partner, owed to the MG limited partners "the highest fiduciary duty recognized in the law." We find further that this fiduciary obligation is sufficient to meet the requirements of Section 523(a)(4).

3. <u>Defalcation and Damages</u>.

A defalcation is a willful neglect of duty, even if not accompanied by fraud or embezzlement. <u>Moreno v. Ashworth</u>, 892 F.2d 417, 421 (5th Cir. 1990). Therefore, any debts incurred by Bennett as a result of the willful neglect of his duties as the managing partner of the managing partner of the MG limited partnership are not dischargeable. 11 U.S.C. § 523(a)(4).

The Appellants argue that the bankruptcy court erred in its determination of the amount of Bennett's non-dischargeable debt in several ways. First, they argue that the court erred in

---

"hide beneath a corporate shell when he so completely controlled the corporate actions, representations and decisions that in effect it had no life without him." <u>Id</u>. at 63. Once again, the court focused on the control exercised by one person over the investments of others.

calculating the amount of debt not dischargeable based on actual damages ( i.e. based on specific defalcations found by the bankruptcy court) instead of granting them restitution of their entire investment. This argument is without merit. While restitution is a permissible method of recovery for breach of fiduciary duty, it is not the only one. <u>Watson v. Limited Partners of WCKT, Ltd.</u>, 570 S.W.2d 179, 182 (Tex.Civ.App.--Austin 1978, writ ref'd n.r.e.). Actual damages are also a permissible remedy for breach of fiduciary duty, <u>Preston Carter Co. v. Tatum</u>, 708 S.W.2d 23 (Tex.App.--Dallas 1986, writ ref'd, n.r.e.), as is a suit for an accounting and exemplary damages, <u>Manges v. Guerra</u>, 673 S.W.2d 180 (Tex. 1984). We find that the method the bankruptcy court employed to calculate Bennett's non-dischargeable debt in this case was permissible under Texas law, and therefore, was not error.

In accordance with the findings and calculations of the bankruptcy court, $72,000 worth of repairs on the HVAC system and $832,204.40 worth of equipment leases were improperly charged to the limited partners. By making these improper charges Bennett willfully neglected his duties to the limited partners and we find that these charges constitute defalcations by Bennett while acting in a fiduciary capacity, and as such are not dischargeable pursuant to 11 U.S.C. § 523(a)(4).

The Appellants also argue that the bankruptcy court exceeded its authority in calculating damages at all, since the Appellants were only seeking a ruling on the dischargeability of the debt in the adversary proceeding. This contention is also without merit.

26

It is customary for a bankruptcy court to determine both liability and the measure of damages in a proceeding to determine the dischargeability of a debt. See e.g. Jordan v. Southeast National Bank (Matter of Jordan), 927 F.2d 221 (5th Cir. 1991); Shaver Motors, Inc. v. Mills (In re Mills), 111 B.R. 186 (Bankr. N.D. Ind. 1988); Medved v. Novak (In re Novak), 97 B.R. 47 (Bankr. D. Kans. 1987). In addition, in their Complaint to Determine Dischargeability of Debt, the Appellants asked the bankruptcy court to enter judgment for them in the full amount of their investment. Thus, the issue of the amount of debt not dischargeable was properly before the bankruptcy court and it was not error for it to rule on that issue.

Finally, the Appellants argue that the bankruptcy court erred in failing to find that the $1 million distribution to Bennett was also a defalcation. On this point we agree with the Appellants. Under Texas law, a fiduciary who breaches his duties forfeits his right to compensation as a matter of law. Kinzbach Tool Co., Inc. v. Corbett-Wallace Corp., 160 S.W.2d 509, 514 (Tex. 1942); Douglas v. Aztec Petroleum Corp., 695 S.W.2d 312, 318 (Tex.App.--Tyler, 1985, no writ); Anderson v. Griffith, 501 S.W.2d 695, 702 (Tex.Civ.App.--Fort Worth 1973, writ ref'd n.r.e.). In addition, it was an act of self dealing and a breach of the duty of good faith and fair dealing for Bennett to have paid himself the $1 million distribution when at the same time he improperly charged more than $800,000 in equipment leases to the limited partners. Thus, the $1 million distribution was also a defalcation by Bennett

27

and is not dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## Conclusion

In conclusion, we find that the question of the non-dischargeability of Bennett's debts to the limited partners under 11 U.S.C. § 523(a)(4) was wrongly decided. We therefore reverse the decisions of the bankruptcy and district courts on that issue and render judgment in favor of the limited partners in the amount of $1,904,204.40.

REVERSED and RENDERED.